363 A.2d 1276

**Isadore SCARF, Administrator of the Estate of Tillie Scarf and Isadore Scarf in his own right, Appellee,**

v.

**Gail S. KOLTOFF, Appellant.**

Superior Court of Pennsylvania.

Sept. 27, 1976.

Jonathan Wheeler, Philadelphia, for appellant.

William Steerman, P. Flexion, Philadelphia, for appellee.

Before WATKINS, Presiding Judge and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

SPAETH, Judge.

This appeal presents the question whether a bystander may recover for mental disturbance and consequent physical injury caused by distress at seeing harm done to another person, when the bystander does not meet the requirements of *Niederman v. Brodsky*, 436 Pa. 401, 261 A.2d 84 (1970), *i. e.*, when the bystander was not in personal danger of physical impact and did not fear such impact. The lower court held that such a bystander could recover. We reverse.

■ Since the question is raised by demurrer, we take as true all well-pleaded facts. *Bach Estate*, 426 Pa. 350, 231 A.2d 125 (1967); *Stahl v. First Pennsylvania Bank & Trust Co.*, 411 Pa. 121, 191 A.2d 386 (1963). Appellant, driving negligently, struck and injured appellee as he crossed the street. Appellee's wife was in the immediate vicinity and saw the accident, which so shocked

her nerves that she suffered a myocardial infarction or aggravation of a preexisting cardiac condition, and as a result died two months later. It is not alleged that appellee's wife was herself in danger of physical impact, or that she feared such impact.

Appellee sued appellant on three counts: first, for the wrongful death of his wife; second, a survival action on behalf of his wife; and third, for his own injuries. The trial court denied appellant's preliminary objections in the nature of a demurrer to the first and second counts and certified the question involved for an interlocutory appeal to this court. Appellate Court Jurisdiction Act, Act of July 31, 1970, P.L. 673, No. 223, art. V, § 501(b), 17 P.S. § 211.501(b).

Until 1970 our cases retained the "impact rule," which required that in order to recover for injuries caused by mental trauma, the plaintiff must show that some physical impact, however slight, had resulted from the defendant's negligence. *Knaub v. Gotwald*, 422 Pa. 267, 220 A.2d 646 (1966); *Bosley v. Andrews*, 393 Pa. 161, 142 A.2d 263 (1958). In *Niederman v. Brodsky, supra*, our Supreme Court discarded this rule for what is sometimes called the "zone-of-danger rule." In *Niederman*, the defendant drove his automobile recklessly and negligently, skidded onto the sidewalk, narrowly missed the plaintiff, and struck the plaintiff's son. The plaintiff, out of fear for his own safety, suffered a variety of heart troubles and sought recovery. The Supreme Court reviewed and found wanting the three arguments that had in the past barred such recovery: difficulty of proof of causation; fear of fraudulent or exaggerated claims; and concern over a possible flood of litigation. The Court therefore stated:

> We today choose to abandon the requirement of a physical impact as a precondition to recovery for damages proximately caused by the tort in only those cases like the one before us where the plaintiff was in per-

sonal danger of physical impact because of the direction of a negligent force against him and where plaintiff

actually did fear the physical impact.
436 Pa. at 413, 261 A.2d at 90.

■■  This language, it will be observed, is carefully limited to the facts that were before the Court.  It is therefore necessary, if the plaintiff in the present case is to recover, to broaden the Court's decision to include a by-stander who was not "in personal danger of physical impact" and did not fear such impact.  In order to decide whether to do this, it is necessary to re-examine some fundamental principles of the law of negligence.

At the outset it should be noted that the catchwords of the law of torts—"foreseeability," "duty," "proximate cause"—are simply legal conclusions.  They serve to limit liability for negligent acts in accordance with a court's, and presumably society's, notions of the just and feasible bounds of an actor's moral culpability.  Prosser observes:

> The statement that there is or is not a duty begs the essential question—whether the plaintiff's interests are entitled to legal protection against the defendant's conduct.  .  .  .  It is a shorthand statement of a conclusion, rather than an aid to analysis in itself.  It is embedded far too firmly in our law to be discarded, and no satisfactory substitute for it, by which the defendant's responsibility may be limited, has been devised. But it should be recognized that "duty" is not sacrosanct in itself, but only an expression of the sum total of those considerations of policy which lead the law to say that the particular plaintiff is entitled to protection.

> Prosser, *The Law of Torts* § 53 (4th ed. 1971) (footnotes omitted).

Judge Andrews, dissenting in the *Palsgraf* case, wrote:

What we do mean by the word "proximate" is, that because of convenience, of public policy, of a rough sense of justice, the law arbitrarily declines to trace a series of events beyond a certain point. This is not logic. It is practical politics.

*Palsgraf v. Long Island R.R.*, 248 N.Y. 339, 352, 162 N.E. 99, 103 (1928) (dissenting opinion).

The question, therefore, is, what are the "practical politics" of the law so far as this case is concerned? We have not faced this question before, but the courts in California and New York have, and since they have reached opposite results, their opinions set forth the arguments on each side.

In *Dillon v. Legg*, 68 Cal.2d 728, 69 Cal.Rptr. 72, 441 P.2d 912 (1968), a mother sued for recovery for emotional trauma and consequent physical injury from seeing her infant daughter run down and killed by the defendant's automobile. The mother was not herself in danger and did not fear for her own safety. The Supreme Court of California allowed her to recover, largely on the basis of foreseeability. With some rephrasing, the court adopted criteria suggested by Prosser: (1) whether the plaintiff was located near the scene of the accident; (2) whether the shock [1] resulted from a direct emotional impact upon the plaintiff from the contemporaneous observance of the accident; and (3) whether the plaintiff and victim were closely related. *Dillon, supra* at 740–41, 69 Cal.Rptr. at 80, 441 P.2d at 920; *see also* Prosser, The Law of Torts § 54 (4th ed. 1971). Each case, said the court, should be decided by asking what the ordinary man, under all the circumstances, should reasonably have foreseen. Given the circumstances before it, the court held that "the negli-

---

1. From other language in *Dillon* it is clear that the court considered physical injury resulting from the emotional shock an important element. Prosser suggests this as a requirement for recovery.

gent driver who causes the death of a young child may reasonably expect that the mother will not be far distant and will upon witnessing the accident suffer emotional trauma." *Dillon, supra* at 741, 69 Cal.Rptr. at 81, 441 P.2d at 921.

In *Tobin v. Grossman,* 24 N.Y.2d 609, 301 N.Y.S.2d 554, 249 N.E.2d 419 (1969), the New York Court of Appeals reached the opposite result.[2] To extend recovery to by-standers not within the zone of danger, the court said, would create a new duty and hence a new cause of action. Since such creations represent a radical change in policy, they should not occur unless required by technological, economic, or social developments. For example, such developments did compel the discarding of the impact rule in favor of the zone-of-danger rule, when courts were persuaded that medical science had become capable of diagnosing mental traumatic causation as well as physical traumatic causation. *Battalla v. State of New York,* 10 N.Y.2d 237, 219 N.Y.S.2d 34, 176 N.E.2d 729 (1961). However, there have been no developments that compel a change to the bystander rule. This being so there are still persuasive policy reasons against extending coverage to the bystander: the problem of unlimited and unduly burdensome liability, and the difficulty of reasonably circumscribing the area of liability.

Of these two approaches we find the New York court's the more persuasive. The criteria suggested by Prosser and adopted in *Dillon* are not reasoned but arbitrary,[3]

---

2. The question in *Tobin* was different from that in *Dillon* in that the mother of the injured child was not an eyewitness to the accident, but rather was inside a neighbor's house, heard the screech of brakes outside, noted the absence of her child, went outside immediately and saw him lying injured on the ground. However, to regard this as a decisive distinction between the two cases would be wrong, for it is clear from other language in *Tobin* that the Court of Appeals would have denied recovery even if the mother had been an eyewitness. 24 N.Y.2d at 617, 301 N.Y.S.2d at 560, 249 N.E.2d at 423.

3. Prosser so states: "Admittedly such restrictions are quite arbitrary, have no reason in themselves, and would be imposed only

for they are unsupported by any policy capable of uniform application. They may seem acceptable as a response to sympathy for a mother who witnesses a gruesome accident to her small child, as in *Dillon*. They become less and less acceptable as one imagines, or meets, the harder cases, as the court in *Tobin* pointed out:

> Every parent who loses a child or whose child of any age suffers an injury is likely to sustain grievous psychological trauma, with the added risk of consequential physical harm. Any rule based solely on eyewitnessing the accident could stand only until the first case comes along in which the parent is in the immediate vicinity but did not see the accident. Moreover, the instant advice that one's child has been killed or injured, by telephone, word of mouth, or by whatever means, even if delayed, will have in most cases the same impact. The sight of gore and exposed bones is not necessary to provide special impact on a parent. Again, the logical difficulty of excluding the grandparent, the relatives, or others *in loco parentis,* and even the conscientious and sensitive caretaker, from a right to recover, if in fact the accident had the grave consequences claimed, raises subtle and elusive hazards in devising a sound rule in this field.

*Tobin v. Grossman, supra* at 617, 301 N.Y.S.2d at 560, 249 N.E.2d at 423.

This prediction of illogical development of the law, if the zone-of-danger rule is abandoned, has been borne out. For example, an intermediate appellate court in California circumnavigated the eyewitness requirement and granted recovery to a mother who saw her injured thirteen-year-old son shortly after his accident. *Archibald v. Braverman,* 275 Cal.App.2d 253, 79 Cal.Rptr. 723 (1969).[4] The

in order to draw a line somewhere short of undue liability." The Law of Torts § 54 (4th ed. 1971).

4. Other California decisions since *Archibald* have rather carefully limited the scope of the *Dillon* rule. For a survey, *see* 8 Hastings L.J. 1248 (1974).

Supreme Court of Hawaii did not insist on the immediate-family requirement in *Leong v. Takasaki*, 55 Haw. 398, 520 P.2d 758 (1974). There a child was granted the right to sue for his distress at witnessing a fatal accident to his step-grandmother. The court found the step-grandmother relation sufficiently close because of certain cultural family patterns in Hawaii: the strong ties among members of the same extended family group, and a concept of adoption peculiar to Hawaiian culture. *Id.* at 410–11, 520 P.2d at 766.

The choice, essentially, is between the positions of Judges Cardozo and Andrews in the *Palsgraf* case, that is, between an actor's liability to anyone within a reasonably foreseeable zone of danger (Cardozo), or to anyone who suffers injuries as a proximate result of the actor's breach of duty to someone (Andrews). We have for a long time adhered to Judge Cardozo's position. *Brusis v. Henkels*, 376 Pa. 226, 102 A.2d 146 (1954); *Dahlstrom v. Shrum*, 368 Pa. 423, 84 A.2d 289 (1951). We find no reason to abandon it.[5]

5. As authority for his conclusion that the modern trend is to allow recovery in cases such as this, the trial judge cited the Restatement (Second) of Torts § 436(2) and (3):

(2) If the actor's conduct is negligent as creating an unreasonable risk of causing bodily harm to another otherwise than by subjecting him to fright, shock, or other similar and immediate emotional disturbance, the fact that such harm results solely from the internal operation of fright or other emotional disturbance does not protect the actor from liability.

(3) The rule stated in Subsection (2) applies where the bodily harm to the other results from his shock or fright at harm or peril to a member of his immediate family occurring in his presence.

Those Subsections, however, while they do abandon the requirement that the other fear for his own safety, still retain the requirement that the other be within the zone of danger; this is made clear by the comment to Subsection (3), comment *f, id.* at 459–60:

The reason for this exception to the general rule that there cannot be recovery for emotional disturbance, or its consequences, arising from the peril of third person lies in the fact that the defendant, by his negligence, has endangered the plaintiff's own safety and threatened him with bodily harm, so that the defendant is in breach of an original duty to the plaintiff to

The result may seem disquieting, but it must be recognized that

> [t]he risks of indirect harm from the loss or injury of loved ones is pervasive and inevitably realized at one time or another. Only a very small part of that risk is brought about by the culpable acts of others. This is the risk of living [, marrying] and bearing children. It is enough that the law establishes liability in favor of those directly or intentionally harmed.

> *Tobin v. Grossman, supra* at 619, 301 N.Y.S.2d at 561–62, 249 N.E.2d at 424 (bracketed portion added to illustrate applicability of passage to present case).

Order reversed, with direction to proceed to trial on count three of the Complaint.

exercise care for his protection. When such a duty is violated, the defendant is not relieved of liability for the bodily harm to the plaintiff which in fact results, by reason of the unusual and unforeseeable manner in which it is brought about. (See § 435.) *Illustration:*

3. A negligently leaves a truck insecurely parked at the top of a hill. Because of this negligence the truck starts down the hill. B and C, her child, are in the street in the path of the truck. The truck swerves, misses B and strikes C. B, who is watching C, does not see the truck coming, and is not alarmed for her own safety, but suffers severe shock and resulting serious illness at the sight of the injury to C. A is subject to liability to B for the shock and her illness.

For present purposes it is unnecessary to decide whether we would adopt Subsection (3) if we were presented with a case like its illustrative case (an altered version of *Hambrook v. Stokes Bros.*, [1925] 1 K.B. 141). It suffices to note that contrary to the trial judge, the Restatement supports our retention of the requirement that the plaintiff have been within the zone of danger.