## Yandrich v. Radic

*Richard C. Angino,* for plaintiff.
*Richard H. Wix,* for defendant.

DOWLING, *J.,* April 24, 1979—We are asked today to extend the "zone of danger" rule to permit recovery for negligently inflicted emotional stress where there is neither physical impact nor endangerment.

This our court cannot do. The road to recompense is blocked by a definitive holding of the Pennsylvania Supreme Court, Niederman v. Brodsky, 436 Pa. 401, 261 A. 2d 84 (1970), and the Pennsylvania Superior Court, Scarf v. Koltoff, 242 Pa. Superior Ct. 294, 363 A. 2d 1276 (1976). While logic and reason could detour these barriers, the ruling of our appellate courts halts us at this dead-end. For a lower tribunal these decisions are indeed the law of the Medes and Persians.*

The background of this case reads like a page from the book of Job. Five children were born to George and Bertha Yandrich. The first three, at the ages of three, two and eight months, perished tragically when their father's runaway car sank in a dam. Mrs. Yandrich died some years later, and in June of 1977 the fourth child, George, was fatally injured in an automobile accident, out of which the present action arose. The complaint alleges, and of course for our purposes must be taken as verity, that following George's death, plaintiff-decedent began to drink heavily, sat around all day, failed to take care of his person and clothing, was constantly crying and saying that he did not care to live. He consummated this desire in October of 1978 by taking a gun and ending his life. The complaint further avers that a psychiatrist is prepared to testify that the accident of June 1977 was the precipitating cause of decedent's depression and suicide. It further charges that defendant was negligent in driving over the rear of the boy's bicycle causing injuries which resulted in his death. In addition, by stipulation, the parties agree that the father

---

*"Now, Oh King, establish the decree and sign the writing, that it be not changed, according to the law of the Medes and Persians, which altereth not." Daniel 6:8.

neither witnessed nor was in the immediate vicinity of the accident but arrived on the scene shortly after its occurrence.

Defendant has filed preliminary objections, in the nature of a demurrer and a motion to strike charging that plaintiff's complaint fails to state a claim upon which relief can be granted because plaintiff seeks to recover for emotional distress incurred by plaintiff-decedent who did not sustain physical impact, was not in fear of personal danger, and neither witnessed nor was in the immediate vicinity of the accident. The application of the law to the facts pleaded and stipulated compels us to sustain defendant's preliminary objections and to dismiss plaintiff's complaint.

Under the current state of the law in this Commonwealth, it is clear that plaintiff's complaint fails to state a claim upon which relief can be granted. Prior to the landmark decision of Niederman v. Brodsky, supra, the courts of Pennsylvania strictly followed the "impact doctrine" which precluded recovery for the negligent infliction of emotional distress and resultant injuries in the absence of a contemporaneous physical impact upon plaintiff. The court in Niederman, however, carved out a carefully limited exception to this rule (referred to as the "zone of danger" rule) when it held that recovery could be had for damages caused where plaintiff, although not sustaining physical impact by defendant's negligent force, was in personal danger of physical impact and was in fear of sustaining such physical impact. There plaintiff had been standing next to his son on a public sidewalk when a vehicle driven by defendant skidded onto the sidewalk, striking the child. Plaintiff alleged that, almost immediately after this accident, he suffered

severe chest pain, which was later diagnosed as acute coronary failure. In holding that plaintiff's complaint stated a cause of action for the injuries sustained by him in the absence of actual impact, the court was careful to limit its holding to the facts before it, stating at 413:

"We today choose to abandon the requirement of a physical impact as a precondition to recovery for damages proximately caused by the tort *in only those cases like the one before us where the plaintiff was in personal danger of physical impact because of the direction of a negligent force against him and where plaintiff actually did fear the physical impact.* Since appellant's complaint alleges facts which if proven will establish that the negligent force was aimed at him and put him in personal danger of physical impact, and that he actually did fear the force, this case must proceed to trial." (Emphasis supplied.)

In Scarf v. Koltoff, supra, plaintiff sought to recover damages for the death of his wife caused by the emotional trauma sustained when she saw her husband struck by defendant's vehicle as he crossed the street. Although plaintiff's decedent was at the accident scene, she was not herself in danger of physical impact, nor did she fear personal physical impact, with defendant's vehicle. The court held that there could be no recovery.

We could well conclude at this point, but in the event that our high court's antipathy for mental and emotional claims may further melt and that the rigors of the common law may be ameliorated, we offer the following.

The "impact doctrine" originated in England in 1888: Victorian Railways' Commissioners v. Coul-

tas, 13 App. Cas. 222 (1888). Within four years Pennsylvania decided two cases adopting the English "impact doctrine": Fox v. Borkey, 126 Pa. 164, 17 Atl. 604 (1889), and Ewing v. Pittsb. C. & St. L. Ry. Co., 147 Pa. 40, 23 Atl. 340 (1892).

In Ewing, plaintiff became frightened, sick and disabled because defendant's railway cars struck her house. The Supreme Court held that the only duty defendant owed plaintiff was not to injure her physically. Moreover, the court concluded, at p. 44, that emotional upset from witnessing accidents was not foreseeable: "But it owed her no duty to protect her from fright, nor had it any reason to anticipate that the result of the collision on its road would so operate on the mind of a person who witnessed it, but who sustained no bodily injury thereby. . . ." Skepticism was expressed in both Fox and Ewing, at p. 45, for emotional complaints without physical injuries: "'Mental pain or anxiety the law cannot value, and does not pretend to redress, when the unlawful act complained of causes that alone.'" The Ewing court concluded, at p. 43, that to permit recovery in such instances would open the floodgates of litigation:

"If mere fright, unaccompanied with bodily injury, is a cause of action, the scope of what are known as accident cases will be very greatly enlarged; for, in every case of a collision on a railroad, the passengers, although they may have sustained no bodily harm, will have a cause of action against the company for the 'fright' to which they have been subjected."

Pennsylvania became so concerned about the possibility of fraudulent claims that originally it even prohibited recovery for emotional losses that followed physical injury, such as pure mental an-

guish and feelings of humiliation: Linn v. Duquesne Boro., 204 Pa. 551, 54 Atl. 341 (1903). In the Linn case, plaintiff fell on an unguarded opening in the street and fractured both of her wrists. Although the appellate court sustained a recovery for the physical and mental suffering caused by the injury itself, the Supreme Court would not permit recovery for the humiliation and regret plaintiff felt because of her inability to perform her household duties and services previously performed for her husband. Quoting from Chicago, Burlington & Quincy R.R. Co. v. Hines, 45 Ill. App. 299 (1892), a case where plaintiff's sorrow because of her crippled condition was rejected as an element of damage:

"While in this state it is a well settled rule of law that damages may be allowed in cases like this for the pain, and anguish of mind caused by the personal injury, yet we are not aware of any case holding that anguish of mind, wholly sentimental, arising from a contemplation of a disfigurement of person, can be considered for the purpose of swelling such damages." 204 Pa. at 555.

In rejecting the wife's humiliation claim, the Linn court held at 555-56:

"The objections to making mental suffering the sole ground of recovery apply with equal force to allowing it as an element of damages when it is not a part of the actual injury but arises afterward from regret, disappointment or anxiety. There are the same opportunities for establishing fanciful or fraudulent claims by testimony which it is impossible to contradict or impeach, and the injustice of holding a defendant responsible for the unforeseen consequences of mere neglect is as great in one case as the other."

The tenor of the Pennsylvania appellate court's feelings for mental and emotional claims was well expressed by Justice Mitchell in Huston v. Freemansburg Boro., 212 Pa. 548, 550, 551, 61 Atl. 1022 (1905):

"In the last half century the ingenuity of counsel, stimulated by the cupidity of clients and encouraged by the prejudices of juries, has expanded the action for negligence until it overtops all others in frequency and importance, but it is only in the very end of that period that it has been stretched to the effort to cover so intangible, so untrustworthy, so illusory and so speculative a cause of action as mere mental disturbance. It requires but a brief judicial experience to be convinced of the large proportion of exaggeration and even of actual fraud in the ordinary action for physical injuries from negligence, and if we opened the door to this new invention the result would be great danger, if not disaster to the cause of practical justice."

Although the terms foreseeability, duty, etc. were used in some of the original cases, the underlying basis for the "impact doctrine" appears to be a mistrust of mental claims and concern for excessive litigation. This is seen in Justice Bell's majority opinion in Bosley v. Andrews, 393 Pa. 161, 168, 142 A. 2d 263 (1958): "To allow recovery for fright, fear, nervous shock, humiliation, mental or emotional distress—with all the disturbances and illnesses which accompany or result therefrom—where there has been no physical injury or impact, would open a Pandora's box."

The Bosley case led to Justice Musmanno's famous dissent which logically and incisively examines and repudiates stare decisis in this legal

area and concludes, at pp. 194-95: "In recapitulation I wish to go on record that the policy on non-liability announced by the Majority in this type of case is insupportable in law, logic and elementary justice—and I shall continue to dissent from it until the cows come home."

In 1970 the cows came home. In Justice Robert's articulate opinion in Niederman he incisively attacks the arguments used to defeat prior claims, to wit, the difficulty of medical science in proving causation, the fear of fraudulent claims and the concern of a flood of litigation, saying, at pp. 408, 409, 412:

"However, the problem of tracing a causal connection from negligence to injury is not peculiar to cases without impact and occurs in all types of litigation . . . in any event, difficulty of proof should not bar the plaintiff from the opportunity of attempting to convince the trier of fact of the truth of her claim. . . .

"[O]ur courts have proven that any protection against such fraudulent claims is contained within the system itself—in the integrity of our judicial process, the knowledge of expert witnesses, the concern of juries and the safeguards of our evidentiary standards. . . .

"Secondly, and more compelling than an academic debate over the apparent or real increases in the amount of litigation, is the fundamental concept of our judicial system that any such increase should not be determinative or relevant to the availability of a judicial forum for the adjudication of impartial individual rights. 'It is the business of the law to remedy wrongs that deserve it, even at the expense of a "flood of litigation"; and it is a pitiful

confession of incompetence on the part of any court of justice to deny relief upon the ground that it will give the courts too much work to do.'"

It is interesting to note that England, which first developed the "impact doctrine," abandoned it within 13 years and as early as 1925 permitted a mother to recover where she was not in the "zone of danger" or even a witness to the accident, citing Hambrook v. Stokes Bros., 1 K. B. 141 (1925) Id. at 275:

"Someone informed her that her child had indeed been hurt and when she visited the hospital and saw her child in bed she suffered a shock which resulted in her death." Id. at 275, 1 K. B. 141 (1925).

One of the best reasoned and most thoroughly researched opinions is a recent one from our sister Commonwealth of Massachusetts: Dzioknoski v. Babineau, 380 N.E. 2d 1295 (1978). It held actionable a situation where the parent came upon the scene of an accident in which a minor child was injured and another involving emotional distress to a husband upon learning of the death of his wife. The court in reversing an earlier contrary decision, Spade v. Lynn & Boston R.R. Co., 168 Mass. 285, 47 N.E. 88 (1897), concluded that the "zone of danger" rule lacked strong logical support and that the reasonable foreseeability of injury to a parent does not turn on whether the parent was or was not a reasonable prospect for a contemporaneous injury because of defendant's negligent conduct.

In summation, the scope of duty in tort is often defined in terms of the reasonable foreseeability of the harm to plaintiff resulting from defendant's negligence. Sometimes liability is predicated on a

characterization that defendant owed a duty to plaintiff or that defendant's negligence was the proximate cause of the injury, or that defendant is liable for the natural and probable consequences of his acts. Each of these characterizations are mere terms used to define the court's limit on recovery. Certainly one can foresee that the killing of an individual will cause emotional trauma to others. The emotional trauma can be just as real, just as devastating, whether one is in the "zone of danger" or whether one is a bystander or whether one comes upon the scene and sees the individual on the ground, or whether one sees the individual in the hospital or in a morgue or never sees the deceased; none of these situations is any more or less foreseeable than the other.

The progression of the law of torts makes safe the prognosis that eventually the "zone of danger" rule will be done away with just as charitable and governmental immunity have had their day. Now that the cows have come home perhaps some of the other beasts of the field may enter into the warm enclosure of justice.

Judges Caldwell and Morgan concur in the result.

## ORDER

And now, April 24, 1979, defendant's preliminary objections are sustained and plaintiff's complaint is dismissed.