507 A.2d 1233

Marvin NEEDLEMAN, Eydis A. Needleman and Melissa Needleman by Her Parent and Natural Guardian, Marvin Needleman, Appellants,

v.

LIBERTY MUTUAL FIRE INSURANCE COMPANY.

Superior Court of Pennsylvania.

Argued Feb. 5, 1986.

Filed April 16, 1986.

Lewis J. Gordon, Philadelphia, for appellants.

Stephen Yarnell, Pittsburgh, for appellee.

Before WICKERSHAM, McEWEN and JOHNSON, JJ.

WICKERSHAM, Judge:

Marvin Needleman, his wife Eydis Needleman, and their daughter Melissa Needleman, appeal from the order of the Court of Common Pleas of Philadelphia County denying their exceptions to a prior order which denied them certain benefits under the Pennsylvania No-fault Motor Vehicle Insurance Act.[1]

The majority of the facts were set forth by counsel in a stipulation in the court below. On September 8, 1980, Rachael Elyse Needleman, aged 4, was struck and killed by a passing motor vehicle while crossing the street in front of her home. Her sister Melissa, then aged 8 or 9, was standing in close proximity and witnessed the accident. Likewise, the girls' mother observed the accident from the front window of their home, and the girls' father, who was exiting from his car in the driveway of their home, also saw the accident. While all three appellants witnessed the accident, none were physically contacted by the motor vehicle which struck and killed Rachael.

Appellants had an automobile insurance policy with Liberty Mutual Fire Insurance Company, appellee herein. As a result of Rachael's death, appellee paid to appellants $23,625.00, which represented full survivor's loss benefits for funeral costs, wage loss, interest and attorney's fees. Appellee, however, refused to pay appellants' additional claims

1. Act of July 19, 1974, P.L. 489, No. 176, 40 P.S. § 1009.101 *et seq.*, repealed by Act of February 12, 1984, P.L. 26, No. 11, § 8(a), effective October 1, 1984.

of $7260.25 [2] for psychiatric and psychological care necessitated by the distress of witnessing Rachael's death, and $53,936.00 for the costs incurred as a result of their moving from their home adjacent to the accident scene to a new residence. The move was deemed necessary by appellants' treating psychologist as an element of their psychiatric care.

On May 19, 1982, appellants filed suit against appellee, seeking no-fault compensation for the above psychiatric and psychological care and costs. Appellee's refusal to pay was not based upon any question concerning the necessity of the psychiatric treatment, but rather it contended that appellants' claims were not compensable under the No-fault Act. The lower court agreed with appellee and on April 23, 1985, it entered a verdict in favor of appellee. Appellants filed exceptions to the verdict, which were denied on May 7, 1985. This appeal timely followed.

Appellants raise two issues for our consideration:

1.  Are the costs of psychiatric and/or psychological care and treatment received by the parties witnessing the death of a family member compensable under their no-fault insurance policy issued under the Pennsylvania No-fault Motor Vehicle Insurance Act.

2.  Are the costs of a medically necessitated move a proper form of therapy and specified procedure or treatment for rehabilitation for which the parties are entitled to payment under § 404 of the Pennsylvania No-fault Motor Vehicle Insurance Act.

Brief for Appellants at iv. Because the lower court concluded that the costs of appellants' psychiatric and psychological care were not compensable under the No-fault Act, it never reached the question of whether the move was properly included in such care.

The issues before us are both ones of first impression in our Commonwealth. While our appellate courts have grap-

2.  As of February 15, 1985, the total outstanding bill for psychiatric treatment had increased to $7,970.25, due to appellants' continuing therapy.

pled with the question of whether and/or when a third party bystander can recover damages for negligently caused mental trauma suffered by them due to witnessing the death, or injury, of a close relative,[3] they have not been faced with the exact issue herein. Unlike these prior cases, the instant case does not involve recovery from the tort-feasor, but rather recover under the No-fault Act. More-over, what appellants request from appellee, their own insurer, are not survivors' benefits under section 201(a) of the Act, which they have admittedly received, but basic loss or first party benefits for their psychiatric care and treat-

3. Pennsylvania tort law regarding bystander recovery for mental or emotional stress has changed significantly over the last twenty years. Prior to 1970, our state adhered to the "impact rule," which barred recovery for fright, nervous shock, or other mental or emotional stress, unless this stress was accompanied by physical impact, or injury, to the nearby witness. *See e.g., Knaub v. Gotwalt,* 422 Pa. 267, 220 A.2d 646 (1966). The impact rule even applied to the actual victim of the tortfeasor's frightening conduct. *See, e.g., Bosley v. Andrews,* 393 Pa. 161, 142 A.2d 263 (1958). In 1970, we abandoned the impact rule, overruling the previous cases, and allowed recovery to a bystander who, shocked at seeing his son hit by a car, suffered a heart attack. *Niederman v. Brodsky,* 436 Pa. 401, 261 A.2d 84 (1970). *Niederman* established a "zone of danger," allowing recovery for shock, mental pain, and physical injuries suffered when the witness was in personal danger from the negligent force and actually feared the physical impact. *See, e.g., Bowman v. Sears, Roebuck & Co.,* 245 Pa.Super. 530, 369 A.2d 754 (1976).

Early efforts to extend this recovery to a bystander outside the zone of physical danger who witnessed the serious injury or death of a loved one were unsuccessful. *See, e.g., Scarf v. Koltoff,* 242 Pa.Super. 294, 363 A.2d 1276 (1976). In 1979, however, our supreme court abandoned the zone of danger rule, stating that recovery of damages for negligently caused mental trauma suffered by a bystander cannot be precluded merely because the bystander was outside the zone of danger. Thus, a mother who, from her front door, viewed a car strike and kill her daughter, was not barred from seeking recovery for mental distress because such mental distress under the circumstances was reasonably forseeable. *Sinn v. Burd,* 486 Pa. 146, 404 A.2d 672 (1979). Efforts to extend the possibility of recovery even further, to emotional injuries suffered by a parent or close relative who did not actually witness the accident have been unsuccessful. *See e.g., Yand-rich v. Radic,* 495 Pa. 243, 433 A.2d 459 (1981); *Vattimo v. Lower Bucks Hospital Inc.,* 59 Pa.Cmwlth. 1, 428 A.2d 765 (1981), *aff'd in part and rev'd in part,* 502 Pa. 241, 465 A.2d 1231 (1983) (recovery for

ment resulting from their emotional distress as "victims" under the Act.

The express policy of the legislature when adopting the No-fault Act was to establish at a reasonable cost to the consumer, a statewide system of "prompt and adequate basic loss benefits for motor vehicle accident victims and the survivors of deceased victims." 40 P.S. § 1009.102(b). A party seeking to recover basic loss benefits must demonstrate that they come within the statutory scheme of the Act. Section 201(a) of the Act provides that "[i]f the accident resulting in injury occurs in this Commonwealth, any victim or any survivor of a deceased victim is entitled to receive basic loss benefits in accordance with the provisions of this act." 40 P.S. § 1009.201(a). Section 103 defines "basic loss benefits" as benefits provided "for the net loss sustained by a victim." 40 P.S. § 1009.103. There is no question that appellants could recover, and have in fact recovered, basic loss benefits on behalf of (as survivors of) their deceased daughter. In order to recover themselves, however, they must be encompassed by the term "victim" as it is used in the Act.

Section 103 defines "victim" as "an individual who suffers injury arising out of the maintenance or use of a motor vehicle." *Id.* The same section defines "injury" as "accidentally sustained bodily harm to an individual and that individual's illness, disease, or death resulting therefrom." *Id.* Appellants argue that they are "victims" since they suffered "injury", i.e., "bodily harm," as a result of the motor vehicle accident which claimed Rachael's life. Appellants reason that bodily harm is not limited solely to physical harm, but includes mental harm also. They note that no provision of the Act states that a physical impact is necessary for there to be a recovery of benefits.

It is a basic rule of statutory construction that words are to be construed "according to their common and approved usage." 1 Pa.C.S. § 1903(a). Our court must construe the

emotional distress not at issue in appeal to Supreme Court); *Brooks v. Decker,* 343 Pa.Super. 497, 495 A.2d 575 (1985).

words of a statute according to their obvious and plain meaning. *Frenchak v. Sunbeam Coal Corp.*, 344 Pa.Super. 37, 495 A.2d 1385 (1985); *Brinkley v. Pealer*, 341 Pa.Super. 432, 491 A.2d 894 (1985). Furthermore, the plain words of a statute cannot be disregarded where the language is free and clear from all ambiguities. *Miller v. Prudential Property and Casualty Insurance Co.*, 344 Pa.Super. 28, 495 A.2d 973 (1985); *Green v. Juneja*, 337 Pa.Super. 460, 487 A.2d 36 (1985).

Webster's Third New International Dictionary (1981) defines "bodily" as "having a body or a material form; physical, corporeal. . . . Bodily contrasts with mental or spiritual." Black's Law Dictionary (5th Ed.1979) defines "bodily" as "pertaining to or concerning the body; of or belonging to the body or the physical constitution; not mental but corporeal." Black's defines "bodily injury" under the injury section as "[p]hysical pain, illness or any impairment of physical condition." Finally, Black's defines "mental" as "relating to or existing in the mind; intellectual, emotional, or psychic, as distinguished from bodily or physical." It is clear that the common and approved usage of "bodily" injury connotes a physical, and not mental, injury. *See Watson v. Willey*, 23 Pa. D. & C.3d 337 (Erie 1982) (neither mental or emotional distress nor shock or trauma suffered by witness to fatal accident are bodily harm as defined under section 103 of the No-fault Act).[4] "[O]ur legislature did not have in mind that every conceivable injury arising from the use of any conceivable self-propelled vehicle where the accident might occur anywhere in the Commonwealth

4. In *Fish v. Gosnell*, 316 Pa.Super. 565, 582, 463 A.2d 1042, 1051 (1983), our court stated that:

[A]lthough a person who suffers only mental injury may be limited regarding his tort remedies, *see Sinn v. Burd*, 486 Pa. 146, 404 A.2d 672 (1979); *Niederman v. Brodsky*, 436 Pa. 401, 261 A.2d 84 (1970), there is no doubt that a person bodily injured may recover damages for pain and suffering, and that pain and suffering includes mental as well as physical anguish.

Thus the court seems to distinguish between "mental" injury and "bodily" injury. However, we note that Fish did not involve a bystander claim under the No-fault Act, but rather a claim by the victim himself against the tortfeasor.

would result in no-fault benefits under the Act." *Bills v. Nationwide Mutual Insurance Co.,* 317 Pa.Super. 188, 194, 463 A.2d 1148, 1151 (1983). Clearly, our legislature limited the coverage of the No-fault Act to bodily injuries caused by the use or maintenance of a motor vehicle.[5]

Applying these definitions, we agree with the lower court's conclusion that the only "victim" under the Act in this case was the deceased child. Appellants, the sister and parents, were not victims because they suffered no bodily injury. Therefore, appellants' no-fault benefits are confined to the survivor's benefits which have already been paid by appellee. This, of course, does not leave appellants without a remedy. While first party no-fault benefits are not available to them, they can still seek recovery for their psychiatric and psychological treatment by means of a third party action against the driver of the automobile. *See Sinn v. Burd,* 486 Pa. 146, 404 A.2d 672 (1979). We note as a practical matter that a suit by the instant appellants against the tortfeasor filed at the present time would likely be barred by the applicable statute of limitations. The parties do not allege, nor does the record disclose, whether such a suit was ever instituted. But since 1979, the caselaw is clear that a suit for mental trauma against the tortfeasor was a viable cause of action. Whether appellants availed themselves of this possible option, however, is not determinative herein.[6]

---

5. We note that the courts of New York have permitted coverage for mental anguish under their No-fault Act, which does not require bodily injury, but rather requires a *severe injury. Harris v. St. Johnsbury Trucking Co.,* 57 A.D.2d 127, 393 N.Y.S.2d 611 (1977); *Lacomb v. Poland Cent. School Dist.,* 116 Misc.2d 585, 455 N.Y.S.2d 994 (1982). Similarly, Hawaii has permitted coverage for psychic injury under its no-fault statute which covers *all* injuries arising out of the use or maintenance of a motor vehicle. *Barcena v. Hawaiian Ins. & Guaranty Co.,* 67 Hawaii 97, 678 P.2d 1082 (1984). Unlike New York or Hawaii, however, our legislature has provided that coverage under our No-fault Act shall only be provided to victims of motor vehicle accidents who have suffered *bodily* injury.

6. Appellants' argument that Pa.R.C.P. No. 238 requires this court to construe the term "bodily injury" to include emotional trauma arising from witnessing an injury to a family member was never raised in the trial court. It is well-settled that matters raised for the first time on

As to appellants' second issue, before any benefits are payable pursuant to section 404 of the Act, 40 P.S. § 1009.404, the court must first determine that the defendant is an "obligor of basic loss benefits." Since we have already rejected this initial premise on the grounds that appellants are not "victims" because they have not sustained "bodily injury," we necessarily reject appellants' additional claim for the costs of relocating their residence.

The order is affirmed.

appeal are not properly preserved for appellate review and will not be considered. *Kovach v. General Telephone Co. of Pennsylvania,* 340 Pa.Super. 144, 489 A.2d 883 (1985); *Cherry v. Willer,* 317 Pa.Super. 58, 463 A.2d 1082 (1983). Even if this issue were not waived, however, we find it to be meritless.