**Merchants and Business Men's Mutual Insurance Company v. Juvenile Rehabilitation Services Inc.**

C.P. of Monroe County, no. 460 Civil 2004.

*Michael P. McKenna,* for plaintiff.

*C. Daniel Higgins Jr.* and *Michael J. Foley,* for defendant C.J.C. a minor, S.S.

*Michael H. Roth,* for defendant, M.L., a minor.

*William F. Anzalone,* for defendant M.S., a minor, J.W., a minor.

*Leo V. DeVito Jr.,* for defendant Juvenile Rehabilitation Services.

*James J. Wilson,* for defendant Wordsworth.

O'BRIEN, *J.,* August 25, 2005—From November of 1999 through August of 2000, defendant Juvenile Rehabilitanon Services Inc. (JRS) placed minors M.S., J.W., M.L. and C.J.C. in short-term foster care with Kevin James Simon, a transvestite, who is currently incarcerated at SCI Graterford, Graterford, Pennsylvania, after pleading guilty to involuntary deviate sexual intercourse, aggravated indecent assault, indecent assault, endangering the welfare of children and corruption of minors, stemming from his interactions with the aforementioned

minors. At the time of the minors' placement with Simon, Merchants and Business Men's Mutual Insurance Company was the commercial liability carrier for JRS at policy number **********-UL. In February 2002, M.S., J.W., M.L. and C.J.C. and their parents/natural guardians initiated lawsuits for personal injuries suffered by filing separate complaints through separate counsel in this court (docket numbers 658 CV 2002, 659 CV 2002, 7280 CV 2002 and 7651 CV 2002 respectivly). On January 20, 2004, Merchants initiated the present declaratory judgment action seeking a judicial determination that it need not defend or indemnify JRS regarding the personal injury claims brought by the minors. On June 7, 2005, Merchants filed a motion for summary judgment arguing that Simon's sexual assault of the minors was an intentional act, thereby excusing Merchants' duty to defendant JRS. Following the submission of briefs and oral argument on August 1, 2005, plaintiff's motion for summary judgment is now before the court for disposition.

Pennsylvania Rule of Civil Procedure 1035.2 provides that a motion for summary judgment may be granted if:

"After the relevant pleadings are closed, but within such time as not to unreasonably delay trial; any party may move for summary judgment in whole or in part as a matter of law

"(1) whenever there is no genuine issue of material fact as to a necessary element of the cause of action or defense which could be established by additional discovery or expert report, or

"(2) if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to

the cause of action or defense which in a jury trial would require the issues to be submitted to a jury."

Summary judgment is a means to eliminate the waste of time and resources of litigants and the courts in cases where a trial would be a useless formality. *Liles v. Balmer,* 389 Pa. Super. 451, 567 A.2d 691 (1989). In a summary judgment proceeding, the court need not determine the facts essential to the case, but only determine if a material issue of fact exists. Summary judgment is only properly granted in cases where the right to judgment is clear and free from doubt, with any existing doubts viewed in light most favorable to the non-moving party. *Marks v. Tasman,* 527 Pa. 132, 589 A.2d 205 (1991); *J.H. ex rel. Hoffman v. Pellak,* 764 A.2d 64 (Pa. Super. 2000). In order to determine whether a case is free from doubt, the court may consider pleadings, depositions, answers to interrogatories, admissions and supporting affidavits. Pa.R.C.P. 1035.1. Non-moving parties may not rest upon mere allegations or denials of pleadings. Rather, the non-moving party must set forth specific facts demonstrating that there are genuine issues for trial. Failure to allege such specific facts will result in a summary judgment, if appropriate, against the non-moving party. Pa.R.C.P. 1035.3; *Washington Federal Savings and Loan Association v. Stein,* 357 Pa. Super. 286, 515 A.2d 980 (1986); *Overly v. Kass,* 382 Pa. Super. 108, 554 A.2d 970 (1989).

The standards to be applied in reviewing coverage questions arising under insurance contracts are well settled. "The proper focus regarding issues of coverage under insurance contracts is the reasonable expectation of the insured. . . . In determining the reasonable expectations of the insured, courts must examine the totality of the insurance transaction involved." *Hertz Corpora-*

*tion v. Smith,* 441 Pa. Super. 575, 578, 657 A.2d 1316, 1317 (1995). (citations omitted) See also, *Britamco Underwriters Inc. v. Weiner,* 431 Pa. Super. 276, 636 A.2d 649 (1994), *alloc. denied,* 540 Pa. 575, 655 A.2d 508 (1994); *Dibble v. Security of America Life Insurance Co.,* 404 Pa. Super. 205, 590 A.2d 352 (1991). While a determination as to the reasonable expectations of the insured must be based upon the totality of the insurance transaction involved, an insured may not complain that his or her reasonable expectations were frustrated by policy limitations which are clear and unambiguous. *Bateman v. Motorists Mutual Insurance Co.,* 527 Pa. 241, 590 A.2d 281 (1991); *St. Paul Mercury Insurance Co. v. Corbett,* 428 Pa. Super. 54, 630 A.2d 28 (1993). However, where a provision of an insurance policy is ambiguous, the provision is to be construed in favor of the insured and against the insurer. *Britamco Underwriters Inc. v. Weiner, supra; Bateman v. Motorists Mutual Insurance Co., supra.* Additionally, Pennsylvania law requires an insurer act with the utmost good faith towards its insured, and it should accord the interest of its insured the same faithful consideration it gives its own interest. *Williams v. Hartford Insurance Company,* 83 F. Supp.2d 567 (E.D. Pa. 2000).

Plaintiff argues that coverage under the policy is triggered by claims of "bodily injury" caused by an "occurrence." Plaintiff alleges that, since the Monroe County pleadings allege neither an "occurrence" nor "bodily injury" as defined in the policies, Merchants need not provide coverage to JRS. Additionally, plaintiff alleges that no punitive damages may be recovered, as punitive damages are barred by both policy language and public policy.

The Commercial General Liability (CGL) policy issued by Merchants to JRS provides in part as follows:

"Section I—Coverages

"Coverage A. Bodily Injury And Property Damage Liability

"(1) Insuring agreement.

"(a) We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies. We will have the right and duty to defend the insured against any 'suit' seeking those damages. However, we will have no duty to defend the insured against any 'suit' seeking damages for 'bodily injury' or 'property damage' to which this insurance does not apply. . . .

"(b) This insurance only applies to 'bodily injury' . . . if:

"(1) The 'bodily injury' or 'property damage' is caused by an 'occurrence' that takes place in the 'coverage territory'; and;

"(2) The 'bodily injury' . . . occurs during the policy period. . . .

"Section V—Definitions

"(3) 'Bodily injury' means bodily injury, sickness or disease sustained by a person, including death, resulting from any of these at any time.

"(12) 'Occurrence' means an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

Initially, the issue of punitive damages has been resolved by agreement of counsel. The policy states that "it is agreed that this policy does not apply to punitive or exemplary damages, fines or penalties." Both at oral ar-

gument and in defendants' briefs, defendants admit that the punitive damages exclusion contained in the policy is sufficient to eliminate coverage for any punitive damages. *Pacific Indemnity v. Linn,* 766 F. 2d 754 (3d Cir. 1985) (in construing insurance policy, under Pennsylvania law, if the words of the policy are clear and unambiguous, the court must give the words their plain and ordinary meaning).

Plaintiff next contends that the Monroe County pleadings do not allege an "occurrence." The insurance policy defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Plaintiff avers that, under Pennsylvania law, sexual molestation is an intentional act, not an accidental act, thus, not an "occurrence" under the policy.

First, we acknowledge that Pennsylvania follows the inferred intent rule when dealing with liability cases concerning the sexual molestation of children by an insured. *Wiley v. State Farm Fire, and Casualty Co.,* 995 F.2d 457 (3d Cir. 1993) (Harm to children in sexual molestation cases is inherent in the very act of sexual assault committed on a child, regardless of the motivation for or nature of such assault . . . the resulting injuries are, as a matter of law, intentional . . .); *Erie Insurance Exchange v. Claypoole,* 449 Pa. Super. 142, 673 A.2d 348 (1996); *Aetna Casualty and Surety Company v. Roe,* 437 Pa. Super. 414, 650 A.2d 94 (1994). The inferred intent rule is not applicable in the case at bar, however, because the complaints are not alleging negligence on the part of Simon, but rather on the part of JRS. Thus, the "occurrence" in this case was not the intentional conduct of Simon, but the accidental, negligent conduct of JRS's

placement of the children with Simon. The complaints allege, inter alia, that JRS failed to do a thorough background check on Simon, failed to investigate Simon's claims to be a female, failed to perform a physical examination of Simon and failed to monitor the children's placement with Simon. All of these negligent omissions by JRS combine to form an "occurrence" under the terms of the insurance policy.

Additionally, the proper focus regarding issues of coverage under insurance contracts is the reasonable expectation of the insured viewed in light of the totality of the insurance transaction. *Hertz Corporation v. Smith, supra.* Clearly, it is not a stretch to presume that JRS expected to be covered by its insurance policy for the negligent placement of children with an unfit foster parent. Moreover, JRS's expectation of coverage for this type of situation is more than reasonable because, if not for protection from improper placement of children, what would JRS seek insurance coverage for?

In support of its position that there was no "occurrence" as defined by the policy, Merchants heavily relies upon *Gene's Restaurant Inc. v. Nationwide Insurance Co.,* 519 Pa. 306, 548 A.2d 246 (1988) and two Superior Court cases, *Erie Insurance Exchange v. Claypoole, supra* and *Aetna Casualty and Surety Company v. Roe, supra.* Although all of these cases dealt with intentional torts which did not trigger coverage under the policy, the facts in the case at bar are readily distinguishable from the cases plaintiff relies on.

In *Gene's Restaurant, supra,* Gene's Restaurant was sued for failing to prevent an attack when one of its bar patrons was physically assaulted by another customer. The Supreme Court of Pennsylvania held that, because

the complaint averred a "willful and malicious assault," which was not an accident but rather an intentional tort, it was not covered by the policy. In *Erie v. Claypoole, supra,* the Superior Court held that a bus driver's automobile liability insurance did not have to defend or indemnify the bus driver in a suit arising out of his sexual molestation of minor bus passengers. *Aetna v. Roe, supra,* also involved the sexual molestation of minors. In that case, the Superior Court held that a homeowner's insurance policy provided no coverage for allegations of sexual, physical and mental abuse of children by its insureds.

The two cases involving sexual assault are easily distinguishable from the case at bar in that both *Erie v. Claypoole* and *Aetna v. Roe* involved the intentional acts of the insured.

Conversely, in the case at bar, it is not the intentional actions of Simon that are at issue, but rather the negligence of JRS in placing the children with Simon and in failing to adequately perform its duty of ensuring the welfare and safety of the children. Additionally, JRS is different than the restaurant in *Gene's Restaurant* because JRS actually placed the children in the care of Simon after approving him as a foster parent. The restaurant played no part in selecting who entered their bar the night of the assault. Additionally, unlike the complaints now before the court, the complaint in *Gene's Restaurant* did not allege any negligence, but rather only alleged willful and malicious assault.

Finally, plaintiff contends that, even if the allegations in the Monroe County complaints give rise to an "occurrence," the insurance policy also requires "bodily injury"

in order to trigger coverage. According to the plaintiff, the minors neither pled nor suffered "bodily injury" as defined in the insurance policy. Plaintiff argues that emotional and mental distress are not physical, bodily injuries. *Needleman v. Liberty Mutual Fire Insurance Co.,* 352 Pa. Super. 288, 507 A.2d 1233 (1986); *Terrafranca v. Virgin Atlantic,* 151 F.3d 108 (3d Cir. 1998) (alleging mere physical manifestation of mental or emotional harm will not rise to the level of bodily injury).

However, a careful review of the pleadings disclose the following factual allegations:

"(10) That during the minor plaintiff's stay with his foster parents, Kevin James Simon, also known as Anna Hart, and James Hart, his/her alleged husband, he was continually subjected to oral sex, anal sex and pornographic movies which displayed explicit sexual scenes causing the said minor plaintiff to be permanently, physically and emotionally scarred. . . .

"(14) That as a further result of the aforesaid injuries, the minor plaintiff, [M.S.] was rendered sick, sore and disabled and sustained severe physical and mental pain, suffering great discomfort and disability associated with the aforesaid injuries, all of which have disabled him and have required medical care and treatment and the plaintiff is informed, believes, and therefore avers that his injuries, suffering, pain, discomfort, and inconvenience, and disabilities are of a continuing and permanent nature." (Merchants' MSJ exhibit B; M.S. complaint, ¶¶10, 14.)

"(10) That during the minor plaintiff's stay with his foster parents, Kevin James Simon, also known as Anna Hart, and James Hart, his/her alleged husband, he was continually subjected to oral sex, anal sex and porno-

graphic movies which displayed explicit sexual scenes causing the said minor plaintiff to be permanently, physically and emotionally scarred. . . .

"(14) That as a further result of the aforesaid injuries, the minor plaintiff J.W. was rendered sick, sore and disabled, and sustained severe physical and mental pain, suffering great discomfort and disability associated with the aforesaid injuries, all of which have disabled him and have required medical care and treatment, and the plaintiff is informed, believes, and therefore avers that his injuries, suffering, pain, discomfort, and inconvenience, and disabilities are of a continuing and permanent nature." (Merchants' MSJ exhibit C; J.W., complaint, ¶¶10, 14.)

"(11) Following the initial placement of plaintiff C.J.C. into the residence of defendant Simon, defendant Simon continuously abused, raped, molested and otherwise sexually assaulted plaintiff C.J.C. . . .

"(17) Plaintiff C.J.C. has been and will in the future be physically, mentally and emotionally damaged, directly and proximately caused by the conduct of defendant JRS in that the physical, sexual and mental abuse of C.J.C. during the period of his foster placement with defendant Simon has caused, presently causes and in the future will cause minor plaintiff C.J.C. to suffer extreme emotional distress, anxiety, depression and numerous other physical and mental ailments." (Merchants' MSJ exhibit D; J.W. complaint, ¶¶11, 17.)

"As a direct and proximate result of the aforementioned negligence of the defendant JRS which resulted in the sexual abuse, molestation and exploitation of minor plaintiff M.L., the minor plaintiff M.L. has suffered and will

continue to suffer profound physical, psychological and emotional injuries." (Merchants' MSJ exhibit E; M.L. complaint, ¶20.)

The above paragraphs illustrate that this is not an instance where the sole injuries alleged are psychological and/or emotional in nature. On the contrary, rape and physical assault are violent acts resulting in what is often severe physical bodily injury. In fact, even the plaintiff describes the minor defendant's complaints as containing broad, "sweeping injury allegations." (Merchants' MSJ brief, 11.) Reading the allegations in the complaints in the light most favorable to the non-moving party, as is required by law, it is clear that physical bodily injury was sufficiently pled by the minor defendants in this case.

In view of the foregoing analysis, plaintiff's motion for summary judgment as to coverage for punitive damages will be granted. However, the claims for compensatory damages resulting from the alleged negligence of JRS are covered by the Merchants commercial liability insurance policy. As such, plaintiff's motion for summary judgment regarding coverage for compensatory damages will be denied.

### ORDER

And now, August 25, 2005, it is ordered as follows:

(1) The motion of plaintiff, Merchants and Business Men's Mutual Insurance Company, for summary judgment with respect to coverage provided to Juvenile Rehabilitation Services Inc. for punitive damages is granted.

(2) In all other respects, the motion of plaintiff, Merchants and Business Men's Mutual Insurance Company, for summary judgment is denied.