**Thomas J. GIANCRISTOFORO, Jr. and Lucy Giancristoforo, Plaintiffs,**

v.

**MISSION GAS AND OIL PRODUCTS, INC., International Surplus Lines Insurance Company, the North River Insurance Company, and International Insurance Company, Defendants.**

No. 91–0385.

United States District Court,
E.D. Pennsylvania.

Oct. 24, 1991.

Robert J. Breslin, Jr., Pappano & Breslin, Brookhaven, Pa., for plaintiffs.

Gerald J. Valentini, Deasey, Mahoney & Bender, Ltd., Philadelphia, Pa., Michael P.

O'Connor, Henry D. Nelkin, Theodore H. Rosenblatt, Bivona & Cohen, P.C., New York City, for defendants.

Arthur R. Tilson, Ft. Washington, Pa., for Mission Gas & Oil Products, Inc.

Christopher C. Fallon, Jr., Philadelphia, Pa., Robert J. Donaghy, for movants.

## MEMORANDUM

KATZ, District Judge:

Plaintiffs and Mission Gas and Oil Products, Inc. ("Mission") are being sued in various state court actions arising out of an explosion and fire on property adjoining plaintiffs' service station. Plaintiffs in three of the underlying suits are intervenors here: Adolf and Gladys DeFinizio and DeFinizio Imports, Inc. own the property on which the explosion and fire occurred; Linda Salvucci was seriously injured in the fire; and Walter Mazur, whose estate is an intervenor, lost his life in the tragic accident. Plaintiffs and intervenors have filed claims, and Mission a cross-claim, seeking declaratory judgments that the defendant insurance companies may not deny coverage regarding the accident.[1]

International Surplus Lines Insurance Company ("ISLIC"), The North River Insurance Company ("North River"), and International Insurance Company ("International") (collectively, the "insurance companies") move for summary judgment that they owe no duty to plaintiffs or to Mission. Plaintiffs move for summary judgment that they are entitled to coverage. Mission moves for summary judgment that it is entitled to coverage as to both its own liability and any liability it may have on plaintiffs' behalf.

By Orders dated September 20, 1991, the court granted Mission leave to file third party complaints against National Associates and The Planning Corporation, brokers through whom Mission purchased in-

---

1. Intervenors have adopted the allegations set forth in plaintiffs' amended declaratory judgment complaint, see Docket entry 18, and have advanced the same arguments as plaintiffs. See Docket entries 91 and 97, intervenors' memoranda in opposition to the insurance companies' motions for summary judgment. Obviously, intervenors' interest in finding "deep pocket" defendants capable of satisfying the potential judgments in the underlying actions are as great as plaintiffs' interest in being insured. Indeed, plaintiffs allowed intervenors to represent their interests at the hearing on these motions.

surance and whom Mission now accuses of failing to provide necessary information regarding coverage and failing to procure the types of coverage Mission requested. ISLIC moves for reconsideration of those Orders.

FACTS

From 1972 to 1986, plaintiff Lucy Giancristoforo and her late husband, Thomas J. Giancristoforo, Sr., rented the service station on their property to Mission, which insured it through the insurance companies. At all times material to this action, the president of Mission, William D'Ippolito, was also the president of a closely related company, Edward J. Sweeny & Sons, Inc. The insurance policies were purchased in the name of both companies. ISLIC insured the companies for up to one million dollars for pollution liability. North River insured them for up to one million dollars under a commercial general liability policy. International insured them under a five million dollar commercial "umbrella," or excess, policy which follows the terms of the North River policy. This umbrella policy lapsed for a period, but was re-instated and in force at the time in question.

During the latter part of Mission's leasehold, plaintiff Thomas J. Giancristoforo, Jr. ("Giancristoforo") was employed as manager of the station. When Mission's lease expired, Giancristoforo began leasing the station from his parents. The station then became known as "Tom's Texico." According to his deposition testimony, he had an oral contract to purchase his gasoline solely from Mission in return for its continuing to pay for insurance coverage on the station. Mission asserts that its performance was excused by Giancristoforo's material breach of that requirement contract. The terms of the oral contract cannot be determined from the record presently before the court. Consequently, it is impossible to determine whether any material breach did in fact occur.

During the course of discovery, invoices were located which reveal that Giancristoforo occasionally purchased gasoline from other suppliers. Mission asserts that such purchases constitute a material breach of the contract and relieve it of any duty it may have had. Subsequently, Giancristoforo stated in an affidavit that he made such purchases only when Mission could not fill an order, that he "cannot imagine" that Mission would consider this practice a breach of the contract, that Mission must certainly have realized that this practice occurred when it could not meet his needs, and that Mission never objected. In any case, there is no dispute that Mission in fact continued to make payments for policies which listed the station as covered and that the Giancristoforos' names were never added as insureds on those policies.

Regarding the ISLIC policy, the parties agree that plaintiffs are clearly not within the class of "persons insured" as defined in the policy. The "Persons Insured" section of the policy lists as insured persons who are named in the policy and executive officers, partners, joint venturers, directors, and stockholders of named entities when they are acting within the scope of their duties; no one claims that plaintiffs are within any of those categories. Rather, the dispute revolves around the policy's description of coverage as "site specific." The broker through whom the policy was purchased, The Planning Corporation, never explained to Charles Spinelli, the official of Mission responsible for insurance, the significance of that term, or the interest in the station that was required in order to maintain insurance, or the parameters of the coverage in terms of parties not named in the policies. Nor did Spinelli specifically inquire into these matters; rather, in a fairly general way, he solicited information from the broker about the coverage available before purchasing the policy in question. For its part, the broker, also in a general way, invited Spinelli to feel free to ask any questions he might have. During the course of their dealings, neither Spinelli, on behalf of Mission, nor the broker, on behalf of ISLIC, discussed or inquired about the more specific details of the policy. Spinelli did not inform the broker that Giancristoforo had begun to rent the station, and the broker did not inform him that this event would effect the coverage.

The North River and International policies, like the ISLIC policy, do not list plaintiffs as insureds. The North River policy does, however, state that Mission is covered for "liability assumed" pursuant to an incidental contract, which is defined in the policy as "any contract or agreement relating to the conduct of the named insured's business." The International policy follows that provision. As with The Planning Corporation, Mission apparently had no detailed conversations about the intricacies of its coverage with National Associates, the broker for North River and International.

On June 4, 1987 an explosion and fire occurred on the property of DeFinizio Imports, Inc., an automobile dealership adjacent to the station, allegedly due to plaintiffs' negligent maintenance of the station's gasoline storage tanks and Mission's negligence in filling the tanks. The insurance companies contend that neither Mission nor the Giancristoforos are insured against the potential liability arising from this tragedy. Plaintiffs and intervenors claim that plaintiffs are covered (1) by the "site specific" ISLIC policy since it lists their station as a covered site, (2) by the North River policy since Mission had an "incidental contract" to provide them with coverage, and (3) by the International policy since it follows the terms of the North River policy. Alternatively, they claim that Mission is liable to plaintiffs for breach of the alleged oral contract to provide coverage. In that case, they claim, the North River and International policies cover plaintiffs pursuant to the "incidental contracts" provision.

Mission has denied any obligation to plaintiffs, but, alternatively, has asserted a claim against the insurers for indemnity in the event that Mission is found to have had a contractual duty to procure insurance on plaintiffs' behalf. Mission has also moved for summary judgment on its own behalf that it is entitled to coverage from ISLIC for any negligence on the part of a Mission employee contributing to the accident. And finally, Mission has filed third party complaints against The Planning Corporation and National Associates for negligence, breach of contract, and breach of fiduciary duty, claiming that they failed to procure the types of coverage requested by Mission.

## STANDARD FOR SUMMARY JUDGEMENT

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, a party is entitled to summary judgment where it demonstrates that there are no disputed issues of material fact and that it is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *In re Paoli R.R. Yards PCB Litigation*, 916 F.2d 829, 848 (3d Cir.1990). The facts must be viewed in the light most favorable to the non-moving parties and all reasonable inferences drawn in their favor. *See Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986). The issues relevant to the motions by and against the insurance companies involve only the application of Pennsylvania insurance law. The disputes between plaintiffs and Mission and between Mission and the brokers, however, involve factual questions which cannot be resolved on the present record.

## DISCUSSION

### I. PLAINTIFFS' AND INTERVENORS' CLAIMS AGAINST ISLIC.

Central to plaintiffs' and intervenors' dispute with ISLIC is the interpretation of the term "site specific" in the policies. To the insurer, it means that the policy refers only to listed sites owned or rented by Mission. Affidavit of Katherine P. Martin, ISLIC's broker, at ¶ 7. Mission understands it to mean that coverage extends to listed sites at which it may have liability based upon conducting its petroleum supply business. Affidavit of Charles Spinelli, Mission's Comptroller, at ¶ 21. Plaintiffs did not specifically question or interpret the term, but understood the policy as a whole to signify that insurance coverage on the station was in force and protected them against the possibility of liability from this type of incident. Deposition of Thomas J. Giancristoforo, Jr. In support of their respective

interpretations, Mission and plaintiffs rely upon the definition of "insured site" in the ISLIC policy: "the specific location or part thereof specified as such in the declarations of this policy." It is not disputed that the service station in question is so specified.

■ If reasonably intelligent people can differ as to the meaning of a provision in an insurance policy, it is ambiguous, *Loomer v. M.R.T. Flying Service, Inc.*, 384 Pa.Super. 244, 247, 558 A.2d 103, 105 (1989), and must be construed against the party responsible for the drafting, the insurer. *Pacific Indem. Co. v. Linn*, 766 F.2d 754, 761 (3d Cir.1985). But where the apparent ambiguity is resolved by another provision of the contract, no ambiguity exists. The policy must be construed as a whole, not in discrete units. *Luko v. Lloyd's London*, 393 Pa.Super. 165, 169, 573 A.2d 1139, 1142 (1990). Here, the explicit definition of "persons insured" is adequate to put plaintiffs on notice that they could have no coverage until their names were added to the policy.

■ Plaintiffs also argue that even if the "site specific" language is unambiguous, ISLIC should be estopped from frustrating plaintiffs' expectation that the presence of the service station address on the policy indicates coverage for their benefit. Pennsylvania law applies the doctrine of equitable estoppel to the construction of insurance policies where necessary to achieve fundamental fairness because the insurance public's *reasonable* expectations are the touchstone of contract interpretation, even if contrary to the policy's terms. *See West American Ins. Co. v. Park*, 933 F.2d 1236, 1239 (3d Cir.1991) (insurer cannot deny coverage after accepting payment, even if policy violates "no stacking" statute); *Tonkovic v. State Farm Mut. Auto Ins. Co.*, 513 Pa. 445, 454, 521 A.2d 920, 925 (1987) (insured not bound by policy provision contrary to the type of coverage he requested and believed he paid for), *Collister v. Nationwide Life Ins. Co.*, 479 Pa. 579, 590, 388 A.2d 1346, 1353 (1978), *cert. denied*, 439 U.S. 1089, 99 S.Ct. 871, 59 L.Ed.2d 55 (1979) (after accepting payment, insurer could not deny coverage for lack of required medical examination). But one essential element of equitable estoppel is missing here: the expectation that plaintiffs were covered was not created by any intentional nor negligent wrongdoing by ISLIC.

Very recently, the Court of Appeals for the Third Circuit rejected a claim of equitable estoppel in a closely analogous situation. In *Nationwide Mut. Ins. Co. v. Budd–Baldwin*, 947 F.2d 1098 (1991), the insured argued that the insurer was estopped from denying coverage when her brother died in an automobile accident. Although the insured made payments in exchange for having her brother listed on the policy as an "occasional driver," the brother did not meet the "occasional driver" requirement in the policy since he was not injured in a vehicle listed in the policy. Nor could the insured or the decedent's estate recover on the theory that the brother was a "relative," (and, therefore, covered for an accident in any vehicle) since the policy explicitly defines that term as one who "regularly lives" in the insured's household. In reversing the district court's summary judgment for the insured (which was based upon an estoppel rationale) and remanding for entry of summary judgment for Nationwide, the Court of Appeals noted that while the insurer accepted premium payments in exchange for listing the brother as an "occasional driver," coverage pursuant to that status must be governed by the explicit terms of the policy, *i.e.*, that an occasional driver injured in a vehicle not listed in the policy is not covered, even though the insured or a "relative," as defined in the policy, would be covered. *Id.*, 947 F.2d at 1104–1106.

Here, although the insurer accepted premiums for covering the service station site, it did so pursuant to a policy which clearly defines "persons insured" in a way which excludes plaintiffs. *See supra.* Absent some malfeasance by the insurer, such as neglect of some duty or deliberate overreaching, no grounds for estoppel exist.

Unlike situations where an insurer negligently fails to carry out instructions from its insured, or negligently fails to make the conditions of coverage clear, or intentionally misrepresents the nature of the coverage provided, ISLIC did not neglect (in fact, it did not receive) an instruction from Mission to add plaintiffs' names to the policy, or fail to provide a clear definition of "persons insured," or deny a type of coverage it had once promised to provide. Rather, it enforced the plain language of the policy.

## II. PLAINTIFFS' AND INTERVENORS' CLAIMS AGAINST NORTH RIVER AND INTERNATIONAL.

■■■ Since the International umbrella policy follows the provisions of the North River general commercial liability policy, the two will be treated together. The "incidental contract" provision in the North River policy, by its plain language, applies to situations where Mission, in the course of conducting its business, assumes liability on another party's behalf. Here, Mission is not alleged to have assumed liability on plaintiffs' behalf, but to have breached a contractual obligation to procure insurance for their benefit. Consequently, there is no coverage under the "incidental contract" provision. The coverage applies to liability arising from the performance—not the non-performance—of contractual duties. Additionally, the policy, again by its clear terms, provides coverage only in the event of an "occurrence," which is defined in the policy as "[a]n accident, including continuous or repeated exposure to conditions, bodily injury or property damage neither expected nor intended from the standpoint of the insured." Damages arising from the breach of Mission's alleged oral contract cannot be brought within the ambit of this definition. *See Toombs N.J. Inc. v. Aetna Cas. & Sur. Co.,* 404 Pa.Super. 471, ——, 591 A.2d 304, 308 (1991) (coverage for liability arising from "incidental contract" does not include breach of contract damages).

## III. MISSION'S CLAIM AGAINST ISLIC.

Mission, in its own right, claims that ISLIC must defend and indemnify it in the underlying actions based upon claims that Mission's negligence in filling the station's storage tanks was a contributory factor to the accident. "[T]he allegations of the underlying complaints broadly assert that Mission, in providing gasoline to Tom's Texico, negligently and carelessly filled the station's gasoline storage tanks causing the leakage that ran to the DeFinizio property." Memorandum in support of Mission's summary judgment motion at 8; *see also* the complaints in the underlying actions, annexed to Mission's memorandum as exhibit "2." ISLIC maintains that Mission had no insurable interest at the station once it ceased to rent it. Mission responds that its interest in being the primary, if not sole, supplier of gasoline to the station is a sufficient interest to allow it to maintain such coverage.

■■■ No doubt, a primary supplier of gasoline to a service station has a considerable pecuniary interest in the station's continued operation. But the ISLIC policy is specifically drafted to cover liability for "pollution incidents" occurring at "locations where [the insured has] liability for storage tanks." Once Mission relinquished its leasehold in the station, it no longer faced the threat of liability for defects in the tanks *per se* any more than a supplier of food to a restaurant is potentially liable to the ultimate consumer if the restaurant negligently allows the food to spoil in a non-functioning refrigerator before serving it. The allegation against Mission in the underlying suits—that Mission's employee negligently filled the station's tanks, *not* that Mission permitted the tanks to decay—is not the type of risk against which the ISLIC policy protects. Mission's potential liability in the underlying cases has nothing to do with the condition of the tanks, but with the alleged negligence with which its employee filled them. Consequently, at the time of the accident, Mission no longer had the type of interest in the site or the type of potential liability for the tanks which the ISLIC pollution policy

covered.[2]

## IV. PLAINTIFFS' AND INTER-VENORS' CLAIMS AGAINST MISSION AND MISSION'S CLAIMS AGAINST THE BROKERS.

 Plaintiffs' and intervenors' claim against Mission cannot be disposed of on motions for summary judgment since there is a genuine dispute regarding a material factual issue, the alleged breach of the oral contract by plaintiffs' purchase of gasoline from other suppliers. While there is uncontroverted evidence that Giancristoforo made purchases from other suppliers, he asserts in his affidavit that the contract only required a good faith effort to purchase first from Mission, and that he was free to turn elsewhere in the event that it could not make a delivery. The details of the contract and the materiality of the purported breach cannot be determined on this record.

It should be noted that Mission questions the propriety of considering Giancristoforo's affidavit which explains the occasional purchases from suppliers other than Mission. Mission would have the court find a material breach of contract based upon the invoices found during discovery. The affidavit was submitted nearly five months after Giancristoforo's deposition and only three days before the hearing on the various motions. At oral argument, Mission's counsel took the position that the affidavit should be disregarded since it contradicts the deposition testimony regarding the sole supplier contract. In support of that position, counsel cited *Martin v. Merrill Dow Pharmaceuticals, Inc.*, 851 F.2d 703, 706 (3d Cir.1988). The instant case is, however, readily distinguishable from *Martin*, where plaintiff's affidavit—submitted in the face of nearly certain defeat on a summary judgment motion—blatantly contradicted her earlier testimony on a fact central to her case, the date of her first ingestion of Bendectin, a drug once prescribed to alleviate nausea during pregnancy and later linked to birth defects. Here, the affidavit is more correctly characterized as clarifying, rather than contradicting, the deposition testimony. *See id.* at 705. Unlike the *Martin* plaintiff, Giancristoforo does not deny what he said earlier so much as he explains it in light of new evidence and a new issue not addressed in the deposition questioning. The court therefore considers the affidavit properly a part of the record and declines to ignore it as Mission requests. The record before the court does not permit summary judgment on the issue of whether Giancristoforo breached his contract with Mission.

Likewise, Mission's third party claims against the brokers hinge on a factual issue, the brokers' alleged failure to carry out Mission's instructions regarding the types of insurance it sought. Moreover, the scope of plaintiffs' claim against Mission, and of Mission's third party claims against the brokers, cannot be determined until the disposition of the underlying actions. To promote judicial efficiency and economy, this action will be placed in civil suspense until that time.

### Conclusion

The insurance companies' motions for summary judgment against plaintiffs are granted. Plaintiffs' cross-motion for summary judgment against the insurance companies is denied. Plaintiff's cross-motion for summary judgment against Mission is denied. Mission's motion for summary judgment against the insurance companies on the claim for indemnity for any liability to plaintiffs is denied. Mission's motion for summary judgment against ISLIC for coverage regarding potential liability based upon allegations of Mission's negligence is denied. ISLIC's motion for reconsideration of the court's Orders of September 20, 1991 granting Mission leave to file an amended answer and third party complaints is denied.

This case is placed in civil suspense pending the disposition of the underlying ac-

---

**2.** Mission is, however, entitled to defense and indemnification for potential liability based upon its own negligence in maintaining the tanks when it rented the station. Acts or omissions by Mission which allowed gasoline or fumes to escape the site are within the policy's definition of a pollution incident.

tions in the Delaware County Court of Common Pleas. An appropriate Order follows.