Slate Construction Company *v.* Bituminous Casualty Corporation, Appellant.

Argued November 14, 1973. Before WRIGHT, P. J., WATKINS, JACOBS, HOFFMAN, CERCONE, and SPAETH, JJ. (SPAULDING, J., absent).

petition for reargument refused May 1, 1974.

*James F. Manley,* with him *Burns, Manley & Little,* for appellant.

*William C. Stillwagon,* with him *Boyle, Nakles, Reeves & Stillwagon,* for appellee.

OPINION BY JACOBS, J., April 3, 1974:

This case presents two issues involving a liability insurance policy issued to a construction company: whether property being worked upon by a subcontrac-

tor, employed by the construction company with the approval of its employer, was in the care, custody or control of the construction company, which remained ultimately responsible for the work; and whether damage to such property caused by the negligence of an employee of the construction company was damage to work performed by or on behalf of the construction company arising out of the work or out of materials, parts or equipment furnished in connection therewith. The facts are well stated by Judge MIHALICH of the lower court in banc:

"The plaintiff [appellee] is an insured under a general liability policy, issued by the defendant insurance company [appellant]. The basic purpose for the general liability insurance policy was to provide coverage to [appellee] in its capacity as general contractor in construction of a road.

"[Appellee] employed . . . L-D Building Company . . . as a subcontractor, to construct certain bridges in this road project.

"During construction of the road and at a time when the subcontractor was in the process of constructing the bridges, [appellee's] employee negligently damaged portions of a bridge. [Appellee] paid the subcontractor for these damages to the bridge and . . . [sued in assumpsit] to recover reimbursement of these payments pursuant to the provisions of [its] general liability policy with [appellant].

"[A] non-jury trial was submitted on a case stated . . . [and] [o]n September 11, 1972, the Trial Court rendered a verdict in favor of the [appellee] in the amount of $9,750.00. . . .

"The [appellant's] defense in the non-jury proceedings and its exceptions to the Court's Verdict and Opinion [were] based on the contention that certain exclusionary provisions of the policy preclude[d] recovery by [appellee] because it was in control of the entire

building project, including the bridges[,] and the work of the subcontractor was being done in behalf of the [appellee]. The exclusionary provisions aforementioned are as follows:

" 'This insurance does not apply: (i) [t]o property damage to (1) property owned or occupied by or rented to the insured, (2) property used by the insured, or (3) property in the care, custody or control of the insured or as to which the insured is for any purpose exercising physical control; . . . (m) [t]o property damage to work performed by or on behalf of the named insured arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith [. . . .]' "

It was stipulated by the parties that the contract between the appellee and its employer contained language stating that the appellee was to keep the contract under its own control and was to see that work under it was properly supervised; that it contained a provision requiring written consent of the employer in the event of a subcontract; and that it provided that no subcontract would release the appellee from liability under the contract. The stipulation included an exhibit of the contract between appellee and the subcontractor, containing a provision that the subcontractor was to have charge of the work performed thereunder until completion and acceptance; the subcontract further provided that under certain circumstances that contract could be terminated or a delay by the subcontractor remedied by appellee. It was stipulated that the appellee's employer had consented in writing to employment of the subcontractor. It was also stipulated that insurance with different provisions in place of the aforementioned exclusions was available at additional cost; that on the date of the damage in question and prior thereto the only employees involved in setting in place the damaged portions of the bridge were those of

the subcontractor; that the portions had not at that time been permanently attached; and that the work and materials supplied by the subcontractor had not at that time been accepted by the appellee. It was further stipulated that the damage occurred through the negligent operation of a CAT 641 by appellee's employee.

The lower court held that under the circumstances neither exclusion of the insurance policy was applicable. We agree and affirm.

In the event of ambiguous or uncertain contractual language; rendering the intention of the parties unclear, "an insurance policy is to be construed most strongly against the insurer and liberally in favor of the insured so as to effect the dominant purpose of indemnity or payment to the insured . . . ." *Penn-Air, Inc. v. Indemnity Ins. Co. of North America,* 439 Pa. 511, 517, 269 A.2d 19, 22 (1970). *See Reese v. Northern Ins. Co.,* 207 Pa. Superior Ct. 19, 215 A.2d 266 (1965); *Mott v. Fireman's Ins. Co.,* 188 Pa. Superior Ct. 359, 146 A. 2d 645 (1958). "[E]xceptions to the general liability of the insurer are to be strictly construed against the insurance company." *Frisch v. State Farm Fire & Cas. Co.,* 218 Pa. Superior Ct. 211, 214, 275 A.2d 849, 851, *allocatur refused,* 218 Pa. Superior Ct. *lx* (1971).

With respect to the exclusion from coverage of property damage to property in the "care, custody or control" of the insured, one commentator has noted: "There are several different reasons for such an exclusion in the policy. Fundamentally, were it not for the exclusion there would be a greater moral hazard as far as the insurance company is concerned. It also eliminates the possibility of the insured making the insurance company a guarantor of its workmanship.

"The liability policy contemplates payment generally in situations where the ordinary degree of care is the measure of liability. The premium is determined on that basis. Liability for damage to property in

charge of or in the care, custody or control of the insured where there is a bailment is controlled by different rules of law, and as a practical result the hazard is greatly increased.

"There is usually some form of insurance available to cover injury to or destruction of the excluded property at a higher premium which is commensurate with the risk. The exclusion is to eliminate securing the same coverage under a liability policy at cheaper rates." Cooke, Jr., *Care, Custody or Control Exclusions,* 1959 Ins. L.J. 7, 9.

The clarity or ambiguity of such an exclusion clause obviously varies with the factual situation to which it must be applied. *Huntingdon Indus., Inc. v. Pennsylvania Mfrs.' Ass'n Cas. Ins. Co.,* 49 Pa. D. & C.2d 35 (1969). It has been held or stated that property being moved by an insured under contract,[1] property being put into place by an insured under contract,[2] and property being possessed by an insured as bailee[3] is in the insured's care, custody or control for purposes of the exclusion. On the other hand, a contrary result has been reached as to that part of a building in another's control across which materials are transported by an insured working on a different portion of the building.[4] A contrary result has also been reached as to a steel deck across which items are conveyed by an insured subcontractor preparatory to installing roofing material on the deck,[5] and as to property merely stored on

---

[1] *Masters v. Celina Mut. Ins. Co.,* 209 Pa. Superior Ct. 111, 224 A.2d 774 (1966).

[2] *International Derrick & Equip. Co. v. Buxbaum,* 240 F.2d 536 (3d Cir. 1957) (applying Pennsylvania law).

[3] *Huntingdon Indus., Inc. v. Pennsylvania Mfrs.' Ass'n Cas. Ins. Co.,* 49 Pa. D. & C.2d 35 (1969).

[4] *Cohen v. Keystone Mut. Cas. Co.,* 151 Pa. Superior Ct. 211, 30 A.2d 203 (1943).

[5] *McCreary Roofing Co. v. Northern Ins. Co.,* 218 Pa. Superior Ct. 193, 275 A.2d 388 (1971).

land of the insured by another, the insured being a prospective processor of the property.[6]

In view of the purposes of the exclusion clause as above recited and the language used in it, we are unable to conclude that the clause is other than ambiguous in the present factual situation. No appreciable increase in moral hazard,[7] guarantee of workmanship, or liability of a bailee is involved in any intended sense of those terms; the construction of the damaged bridge was in fact being conducted by the subcontractor, not the appellee, at the time it was damaged. It has been said that "a general contractor who delegates some work to a subcontractor regains custody and control over the property within the meaning of the exclusion clause after the termination of the work by the subcontractor." Annot., 62 A.L.R.2d 1242, 1254 (1958). Prior to such time, and under the facts of the present case, we can not say that the applicability of the exclusion is free from doubt.

With respect to the exclusion from coverage of property damage to work performed by or on behalf of the insured arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith, the rule that words of common usage in an insurance policy must be construed in their natural, plain, and ordinary sense[8] is applicable. It will be noted that only damage to work which arises out of the work, or out of connected materials, parts

---

[6] *Huntingdon Indus., Inc. v. Pennsylvania Mfrs.' Ass'n Cas. Ins. Co.*, 49 Pa. D. & C.2d 35 (1969).

[7] *See Elcar Mobile Homes, Inc. v. D. K. Baxter, Inc.*, 66 N.J. Super. 478, 169 A.2d 509 (1961) ; E. Patterson, Essentials of Insurance Law 111, 210-11, 334, 359 (1957).

[8] *Blue Anchor Overall Co. v. Pennsylvania Lumbermens Mut. Ins. Co.*, 385 Pa. 394, 123 A.2d 413 (1956).

8

or equipment, is excluded from coverage.  Damage arising in another manner is not.[9]

We are unable to say that the damage to the work under present consideration arose out of that work, as it might have arisen had the bridge been of defective design or construction,[10] or had the damage occurred in the building of the bridge; the source of the damage to the bridge was external to that structure, and unconnected with its construction.  Nor does the damage appear to have arisen from materials, parts or equipment connected with the damaged work.  We believe, therefore, that the exclusion clause is at best unclear in its application to the present factual situation.

Both clauses of exclusion being of doubtful applicability under the circumstances, the judgment of the lower court must be affirmed.

Judgment affirmed.

---

[9] The maxim *expressio unius est exclusio alterius* is applicable to insurance policy exclusions. *See Snader v. London & Lancashire Indem. Co. of America*, 62 Pa. D. & C. 288 (1947), *aff'd*, 360 Pa. 548, 62 A.2d 835 (1949).

[10] *Cf. Owens Pacific Marine, Inc. v. Insurance Co. of North America*, 12 Cal. App. 3d 661, 90 Cal. Rptr. 826 (1970).