591 A.2d 304

**TOOMBS NJ INC., a New Jersey Corporation, Trading as Forrestal Village Associates, a Limited Partnership and Village One Associates, a Limited Partnership and W. Scott Toombs, Appellants,**

v.

**The AETNA CASUALTY & SURETY COMPANY.**

Superior Court of Pennsylvania.

Argued Jan. 29, 1991.

Filed May 22, 1991.

---

472

John E. McKeever, Philadelphia, for appellants.

Martin G. Malloy, Philadelphia, for appellee.

Before CAVANAUGH, CIRILLO and BROSKY, JJ.

BROSKY, Judge.

This is an appeal from an order granting appellee's motion for summary judgment in a declaratory judgment action involving insurance coverage under a policy issued by appellee to appellant. Appellants advance three general arguments to support their position. First they argue that they are being sued for an invasion of a right to private occupancy which is covered under the liability policy. Second, they argue that the purchase of expanded contractual liability coverage compels appellee to defend the action in question. Third, they argue that DiMarco's complaint alleges tortious claims that are covered under the policy. We affirm.

Appellant Toombs NJ, Inc. is a corporation that was involved in a real estate development project known as Princeton Forrestal Village. Toombs, and/or its partner, Village One Associates, became involved in contractual negotiations with Anthony DiMarco to build and operate two

restaurants at Forrestal Village inside of a core Mall-type structure. On January 15, 1987, DiMarco and Village One signed a letter of intent for DiMarco to build and operate two restaurants under a 15 year lease. After the signing of the letter of intent, extensive negotiations and dealings were conducted to finalize the agreement to build and operate the restaurants. However, the negotiations were not without complications. For instance, DiMarco had difficulty obtaining financing for the restaurant project. Consequently, Toombs offered to become a partner or joint venturer in the restaurants and to secure financing. Furthermore, after the entering of the joint venture, Toombs agreed to pay a substantial portion of the architectural design work by the Hillier Group. However, despite the complexity of the negotiations, it is alleged by DiMarco that all details were worked out to the satisfaction of all involved parties and a "final agreement" was consummated on or about Thursday, June 18, 1987.

The following week DiMarco's attorney spoke to appellants' attorney regarding certain details of the agreement when allegedly appellants' attorney indicated that there was a little problem but reassured him that "the deal was still on." The following day, upon being called by DiMarco's attorney, appellants' attorney allegedly indicated that appellants were now talking with other restaurants. DiMarco called Scott Toombs who stated that the deal was off and that he never should have agreed to the terms he did. DiMarco later filed suit against appellants alleging damages for loss of earnings, salary and costs for architectural designs, some or all of which appellants allegedly used. DiMarco's complaint alleged breach of contract, detrimental reliance and conversion of the architectural designs.

Upon receiving the complaint from DiMarco, appellants rendered the same to appellee and requested a defense. After some consideration, appellee indicated that it believed that the suit by DiMarco was not of a type that coverage was provided for. Consequently, appellee refused to defend appellants. Appellants responded by filing a declaratory

judgment action in an effort to clarify whether or not there existed coverage for the underlying lawsuit. Motions for summary judgment were filed by both sides. After consideration the court found that appellants were not afforded coverage under the issued policies for the damages and actions in issue.

In a recent *en banc* decision of this court involving the obligations of several insurers who had issued policies to a defendant in personal injury suits, *J.H. France Refractories v. Allstate Insurance Company*, 396 Pa.Super. 185, 578 A.2d 468 (1990), we placed a great deal of focus on an analysis of the reasonable expectations of the parties relative to the contractual relationship they had entered into as insurer and insured. Particularly in actions like the present one a journey into complex wording of phrases and policy language can monopolize an inquiry and lead reasonable people away from the true purpose of the inquiry, that being the determination of a reasonable reading of the insurance contract. Keeping this idea in mind we find it easier to conclude that the trial court was correct in its determination that appellee owed no duty of defense to appellant under the facts presented here.

Upon reviewing the facts of the case, particularly those involving the underlying lawsuit, a fair and honest appraisal of DiMarco's complaint indicates that DiMarco and appellee Toombs were involved in protracted negotiations preparatory to the establishment of two restaurants in the Mall under development. According to the allegations in the underlying complaint, a final agreement as to the complex terms had been reached at the end of the business week ending June 19, 1987. On Monday June 22, 1987, Toombs allegedly backed out of the deal finalized on Friday. DiMarco has now sued for breach of contract. The action, both in essence and upon its face, is one for a breach of contract. The nature of the potential damages and the nature of the acts alleged both indicate that the action is one based in contract and not in tort. The recovery sought relates to a breach of contract, not a tortious act. Appel-

lants have not offered any precedent that indicates that indemnification is provided for such damages when a comprehensive liability policy is purchased, and for good reason. To allow indemnification under the facts presented here would have the effect of making the insurer a sort of silent business partner subject to great risk in the economic venture without any prospects of sharing in the economic benefit. The expansion of the scope of the insurer's liability would be enormous without corresponding compensation. There is simply no reason to expect that such a liability would be covered under a comprehensive liability policy which has, as its genesis, the purpose of protecting an individual or entity from liability for essentially accidental injury to another individual, or property damage to another's possessions, even if, perhaps, the coverage of the policy has been expanded to cover other non-bodily injuries that sound in tort.

Despite the fact that an overall view of the situation leads one to have great intuitive suspicion that coverage would be provided under the facts of the present case, appellants have attempted to argue this very theory relying on certain policy language. However, none of the arguments convince us that coverage is afforded for this factual scenario. The major argument advanced by appellants is that the alleged breach of the agreement would constitute a "wrongful eviction or other invasion of the right of private occupancy" thus constituting a "personal injury" under the policy language.[1] However, we are unconvinced that what has been alleged could be reasonably thought of as wrongful eviction or other invasion of the right of private occupancy as designated in the policy.

■ We note initially that the task of interpreting a contract is generally performed by the court with the primary objective being the effectuation of the intent of the

---

**1.** The policy defines personal injury as "injury arising out of one or more of the following offenses committed during the policy period (1) false arrest, detention, imprisonment or malicious prosecution; (2) wrongful entry or eviction or other invasion of the right of private occupancy ..."

parties as is reasonably manifested by the language of the written instrument. *Standard Venetian Blind Co. v. American Empire Insurance Co.*, 503 Pa. 300, 469 A.2d 563 (1983). Towards this goal, it is a fundamental rule of construction and interpretation that words and phrases be given their plain and ordinary meaning when possible. Consequently, we look to the following sources regarding the terms in question. Webster's Ninth New Collegiate Dictionary defines evict in the following manner: "to recover (property) from a person by legal process, to put (a tenant) out by legal process ... to force out: expel." Black's Law Dictionary, Fifth Edition, defines eviction as "dispossession by process of law; the act of depriving a person of the possession of land or rental property which he has held or leased.... Deprivation of lessee of possession of premises...." Corpus Juris Secundum goes as far as to assert that "there can be no eviction without an antecedent possession by the tenant; one cannot be evicted from premises of which he has never had possession, ..." CJS § 447(b). Consequently, we conclude, the term wrongful eviction reasonably connotes a situation where a party was already in possession of the premises and then evicted without legal justification.

Secondly, even if we were to conclude that one could be "evicted" prior to taking possession of the premises, it would seem to greatly strain this concept to call the rather quick backing out of a negotiated contract for possession an eviction. Third, even if our scenario was somehow regarded as a technical eviction,[2] nothing in the allegations of the underlying suit creates an impression that the act of reneging on the deal was tortious rather than contractual. As

2. In the present case it is unclear whether the parties ever entered into a formal landlord-tenant relationship. Appellants argue that DiMarco clearly alleges a right to occupy the premises based upon the agreement reached on June 18, 1987. However, a review of DiMarco's complaint indicates that it alleges that the parties agreed, on June 18th, to "formalize the lease, with Special Lease Provisions and Addendum, the following week, namely the week of June 22, 1987." Clearly, to the extent the parties may have never actually signed a lease appellants argument is weakened.

indicated above, the liability policy issued cannot be reasonably construed to indemnify for damages sounding in contractual breach.[3] Such a holding simply is not reasonable in the commercial context that the transaction took place. Appellants, although citing numerous cases from numerous jurisdictions, have not cited any cases holding that a breaking of a lease prior to occupation has been considered a wrongful eviction for liability policy purposes. Nor do we think that when one contemplates the concept of wrongful eviction the present scenario comes into contemplation. As such, we cannot conclude that what is alleged in the underlying complaint can be reasonably thought of as stating a claim for wrongful eviction as contemplated in the policy. Nor are we inclined to construe the phrase "other right of private occupancy" to encompass the scenario presented here.[4]

**3.** For additional discussion of this concept see cases of *Fragomeno v. Insurance Co. of the West,* 207 Cal.App.3d 822, 255 Cal.Rptr. 111 (1989), and *Fireman's Fund Insurance Company v. City of Turlock,* 170 Cal.App.3d 988, 216 Cal.Rptr. 796 (1985). In both cases the California court concluded that the underlying suit was essentially one for breach of contract and, therefore, outside the scope of the policy.

**4.** We do not wish to make a blanket statement regarding potential coverage of other factual scenarios, thus, we limit the scope of this decision to facts relatively similar to the present case. For instance, we do not wish to state positively and uncompromisingly that possession is essential to bring an action within the scope of the policy. Other jurisdictions have considered claims against landlords where a potential tenant was allegedly excluded from occupation solely because of race or creed. Some of these jurisdictions have found such a discrimination action against a landlord to be covered under the policy language. *Gardner v. Romano,* 688 F.Supp. 489 (E.D.Wis. 1988), *State Farm Fire & Casualty Co. v. Westchester Investment Co.,* 721 F.Supp. 1165 (C.D.Cal.1989). If a blanket possession test were gleaned from this case such an action would be deemed outside of the policy. We are not willing to implement such a broad premise in this case. We would note that such an action for exclusion from rental property would have a clearly tortious basis. Thus, distinguishing it from the present case.

Similarly, we do not wish to indicate that a claim which has some contractual basis or tie is *per se* outside the scope of coverage. In *Beltway Management Co. v. Montgomery Mutual Ins. Co.,* 746 F.Supp. 1145 (D.C.1990), the district court for the District of Columbia found that a tenant council's action against a landlord for breach of statutory and common law warranties of habitability was within the scope

■ Appellants have set forth an argument that the policy in question does encompass essentially economic, i.e. contractual breach, damages. However, we find this argument unconvincing. Appellants point to the fact that they purchased expanded Contractual Liability Coverage and argue that this endorsement covers the damages alleged in the underlying complaint. A review of the endorsement in question, however, reveals that it provides coverage for liability that is contractually assumed, not liability that is based upon a contract breach. Normally, liability that is contractually assumed is excluded from coverage unless it is an incidental contract, a class of contracts that, under policy definitions, is relatively narrow in scope.

The endorsement in question expands the definition of incidental contract to include any contract relating to the conduct of the insured's business. Thus, when this additional coverage is purchased the insurance coverage is expanded to include liability that is being imposed upon the insured by virtue of a contractual assumption of the liability. However, the nature of the damages for which recovery is sought are not changed by this endorsement to include damages from a breach of contract, rather the damages to which this endorsement is directed is the same as in the original broad comprehensive policy, bodily injury and property damage caused by an occurrence.

Appellants have relied heavily upon the case of *Western Casualty & Surety v. International Spas of Arizona, Inc.,* 130 Ariz. 76, 634 P.2d 3 (1981). We find this case distinguishable from the present one. *Western Casualty* involved a situation where the insured, International Spas, terminated a lease with an individual who had been operat-

of a liability policy with the same relevant language as the within case. The court there found that the action sounded in constructive eviction and was therefore within the policy's "invasion of a right of private occupancy" language. We note that in *Beltway* the action was by individuals occupying the premises in question. Further, to the extent a warranty of habitability is legally and/or statutorily imputed or implied into all residential leases in the District of Columbia the breach of the warranty colors the claim as, at least, quasi-tortious; thus, at least intuitively, differentiating that case from the present one.

ing a juice and beverage bar on a portion of the spa property and also allegedly converted certain property owned by the lessee. The court considered the same personal injury clause presented here and found that the actions alleged to have taken place fell within the coverage of the policy. Appellants argue that this case compels a reversal of the trial court's decision.

In *Western Casualty* the underlying plaintiff had been in full possession of the premises, a portion of the spa, and had an ongoing concern prior to being allegedly forced out of business without justification. The court concluded that those allegations activated coverage under the wrongful eviction clause. That the action was grounded in essentially tortious conduct is borne out by the court's observation that two of the counts of the underlying complaint were for alleged intentional torts committed during the course of the wrongful eviction. *Western Casualty* is clearly different than the within case. It not only covered a situation where there was true possession of the leased premises, if the allegations were true, it also involved a clearly tortious wrongful eviction.

As a counter-argument to the trial court's conclusion that the policy covered only tortious claims, appellants assert that the underlying complaint did assert an action for conversion of architectural designs and plans. Even assuming that the conduct alleged constitutes a conversion of property, (something which is less than certain considering the factual allegations) [5], conversion of property, by itself,

---

5. The complaint alleges that DiMarco originally requested the Hillier group to start architectural design work but requested a cessation of work when financing was turned down. After appellants became joint venturers in the restaurant project the work was continued. Under agreements between appellants and DiMarco, both DiMarco and Village One were to pay a portion of the fees. In the event the relationship was terminated the design work was to become the property of Village One, provided that DiMarco was reimbursed for all expenditures made for the designs and plans. DiMarco's complaint alleges that after appellants reneged on the restaurant deal they retained the designs and plans prepared by the Hillier Group for the

has not been demonstrated by appellant to be within the parameters of the policy. Conversion is not listed as one of the offenses included in the definition of personal injury for which injury arising therefrom would be a covered personal injury under the policy, and in *Western Casualty* the torts were found to have allegedly been committed during the course of the wrongful eviction.

Furthermore, a conversion of a tenant's property by a landlord would seem to be a breach of a warranty of quiet enjoyment and ostensibly compensable under the "other invasion of the right of private occupancy" language in the policy. It would seem that a classical landlord-tenant relationship would be required to bring the conversion into the scope of the policy language. We have already indicated that the scenario presented should not be construed as a wrongful eviction within the policy's meaning. Nor do we think that any misappropriation of plans could be considered to have occurred during a wrongful eviction or a breach of a warranty of quiet enjoyment. Rather, in the factual context presented, any conversion of property would have to be deemed to have occurred in the business partnership arrangement that existed between Toombs and DiMarco. As such, this argument must fail.

For the above reasons we conclude that the trial court correctly determined that under the policy issued appellants coverage is not provided for the facts alleged in the underlying complaint.

Order affirmed.

joint venture and have not yet reimbursed DiMarco for his expenditures for the plans.