657 A.2d 1316

The HERTZ CORPORATION

v.

Gray SMITH, Appellant,

v.

ST. PAUL FIRE & MARINE INSURANCE COMPANY.

Superior Court of Pennsylvania.

Argued April 6, 1995.

Filed May 15, 1995.

Roxanne D. Galeoto, Philadelphia, for appellant.

Steven K. Gerber, Philadelphia, for St. Paul Fire & Marine Insurance, appellee.

Before CIRILLO, JOHNSON and SAYLOR, JJ.

CIRILLO, Judge.

Gray Smith appeals from an order entered in the Court of Common Pleas of Philadelphia County, granting summary judgment in favor of The Hertz Corporation ("Hertz") and additional defendant St. Paul Fire & Marine Insurance Company ("St. Paul"), and against Smith. We affirm.

On or about December 12, 1991, Smith rented an automobile from Hertz. At the execution of the rental agreement, Smith declined the optional loss damage waiver and agreed to be contractually liable for any and all loss or damage to the rental car, regardless of fault. While he was driving the rental car, Smith was involved in a two-car automobile accident.

As a result of the accident, the rental car sustained property damage in the amount of $5,363.74. Hertz demanded that Smith pay for the damage to the car, in accordance with the above-mentioned terms of the rental agreement. Smith refused, and Hertz instituted the underlying action.

Smith submitted both Hertz' claim and the claim of the other driver to St. Paul. At the time of the accident, Smith [1] maintained a "Package Accounts for Commercial Enterprises" policy of insurance with St. Paul. St. Paul paid $9,079.37 to the driver of the other automobile for the property damage

---

1. The named insured under the policy was designated as follows: "dba: Gray Smith's Office, Architecture & Community Development."

claim resulting from the damage to his vehicle. St. Paul denied coverage to Smith for the property damage to the rented Hertz car, alleging that the damage to the rental car did not fall within the scope of St. Paul's policy.

Smith answered Hertz' complaint and joined St. Paul as an additional defendant, alleging that St. Paul failed to provide insurance benefits to Smith. St. Paul answered Smith's third party complaint and denied any and all liability. Hertz asserted no claims against St. Paul.

The matter was tried before an arbitration panel, after which judgment was entered in favor of Hertz and St. Paul and against Smith. Smith appealed the arbitrators' decision to the Court of Common Pleas of Philadelphia County.

The parties stipulated to the pertinent facts. Thereafter, Hertz and St. Paul each filed motions for summary judgment against Smith. Smith filed separate responses in opposition thereto. The Honorable Joseph D. O'Keefe entered summary judgment in favor of Hertz and St. Paul and against Smith. Smith filed the instant appeal and asks this court to consider whether the trial court erred or abused its discretion in finding that the damage to the rental car was not covered under the St. Paul policy and, hence, in granting summary judgment in favor of St. Paul and against Smith.

When we review the grant of a motion for summary judgment made under Pa.R.C.P. 1035, the appellate court's scope of review is well-settled: summary judgment is properly granted where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Pa.R.C.P. 1035(b). Summary judgment may be granted only where the right is clear and free from doubt. *Musser v. Vilsmeier Auction Co.*, 522 Pa. 367, 369, 562 A.2d 279, 280 (1989). The moving party has the burden of proving that there is no genuine issue of material fact. *Thompson Coal Co. v. Pike Coal Co.*, 488 Pa. 198, 412 A.2d 466 (1979). The record and any inferences therefrom must be viewed in the light most favorable to the nonmoving party, and any doubt must be resolved against the moving party. *Davis v.*

*Pennzoil Co.*, 438 Pa. 194, 264 A.2d 597 (1970). The trial court will be overturned on the entry of summary judgment only if there has been an error of law or a clear abuse of discretion. *Hetrick v. Apollo Gas Co.*, 415 Pa.Super. 189, 608 A.2d 1074 (1992).

As noted above, the parties stipulated to the essential facts. The trial court's sole responsibility with respect to the dispute between Smith and St. Paul, therefore, was to apply the stipulated facts to the terms of the St. Paul policy and ascertain whether the damage to the Hertz rental car was covered by the policy.

The standards to be applied in reviewing insurance contracts are well settled. The proper focus regarding issues of coverage under insurance contracts is the reasonable expectation of the insured. *Dibble v. Security of America Life Ins. Co.*, 404 Pa.Super. 205, 210, 590 A.2d 352, 354 (1991). In determining the reasonable expectations of the insured, courts must examine the totality of the insurance transaction involved. *Id.* However, while reasonable expectations of the insured are the focal points in interpreting the contract language of insurance policies, *see Collister v. Nationwide Life Ins. Co.*, 479 Pa. 579, 388 A.2d 1346 (1978) and *Winters v. Erie Ins. Group*, 367 Pa.Super. 253, 532 A.2d 885 (1987), an insured may not complain that his or her reasonable expectations were frustrated by policy limitations which are clear and unambiguous. *Bateman v. Motorists Mut. Ins. Co.*, 527 Pa. 241, 245, 590 A.2d 281, 283 (1991); *see also Neil v. Allstate Ins. Co.*, 379 Pa.Super. 299, 549 A.2d 1304 (1988); *St. Paul Mercury Ins. Co. v. Corbett*, 428 Pa.Super. 54, 630 A.2d 28 (1993) (*en banc*). However, where a provision of an insurance policy is ambiguous, the provision is construed in favor of the insured and against the insurer. *Bateman*, 527 Pa. at 245, 590 A.2d at 283; *Standard Venetian Blind Co. v. American Empire Ins. Co.*, 503 Pa. 300, 305, 469 A.2d 563, 566 (1983); *Patton v. Patton*, 413 Pa. 566, 573, 198 A.2d 578, 582 (1964).

The question of whether a duty to indemnify arises depends upon the type of claim in issue. *Creed v. Allstate Ins. Co.*, 365 Pa.Super. 136, 140, 529 A.2d 10, 12 (1987). Furthermore, an

inquiry into whether a loss is within the policy coverage is a question of law and may be decided by a motion for summary judgment. *Id.* (citing *D'Auria v. Zurich Ins. Co.*, 352 Pa.Super. 231, 507 A.2d 857 (1986); *Patterson v. Reliance Ins. Co.*, 332 Pa.Super. 592, 481 A.2d 947 (1984); *Insurance Co. of North Am. v. State Farm Mut. Ins. Co.*, 266 Pa.Super. 197, 403 A.2d 611 (1979)). *See also Bole v. New Hampshire Fire Ins. Co.*, 159 Pa. 53, 28 A. 205 (1893).

■ In this case, Smith sought coverage under a commercial general liability protection policy titled Package Accounts for Commercial Enterprises ("PACE"). The "coverage summary" page of the PACE policy shows the limits of standard coverages and the limits of any optional coverages purchased by the insured. In this case, Smith purchased optional coverage for "Liability Protection for Autos You Don't Own," including "Non-owned" and "Hired Auto[s]." The limits of coverage under this option was $2,000,000[.00].

Endorsement 44366 to the policy is captioned as *"Liability Protection* For Autos You Don't Own," and provides coverage for "a *covered* bodily injury or property damage claim resulting from an accident involving the maintenance, use, loading or unloading of a covered auto." (emphasis added). "Covered auto[s]" are defined by the endorsement as follows:

**Which Autos Are Covered**

The Coverage Summary shows which autos are covered under this agreement.

**Hired autos.** If this is shown in the Coverage Summary, we'll cover autos you hire, rent or borrow. This doesn't include autos you lease, hire, rent or borrow from any of your employees or members of their households.

**Non-owned autos.** If this is shown in the Coverage Summary, we'll cover autos you don't own, lease, hire or borrow which are used in connection with your business....

(emphasis in original). As mentioned above, the coverage summary page of Smith's policy provided coverage for both non-owned and hired automobiles. It remains to be determined, however, whether the damage to the rental car is

"covered ... property damage" under the terms of the St. Paul policy.

Endorsement 44366 enumerates several exclusions to coverage. Specifically, the endorsement contains a contractual liability exclusion, which provides, in pertinent part:

**Contractual Liability.** We won't cover any claim based on liability assumed under a contract or agreement. But this [exclusion] doesn't apply to liability assumed under a Covered contract, or liability that you would have if no covered contract existed.

The question with respect to this exclusion is whether the rental agreement between Hertz and Smith is a "covered contract" so as to negate the effect of the exclusion. If the rental agreement is a "covered contract," then the exclusion does not operate to bar recovery of benefits under the St. Paul policy. Conversely, if the rental agreement falls outside of the definition of a "covered contract," and liability would not otherwise attach absent such a contract, then the exclusion applies and Smith's claim is not covered under the St. Paul policy. The policy defines "covered contract" in the following manner:

*Covered contract* means:

\*    \*    \*    \*    \*    \*

that part of any other contract or agreement under which you assume the tort liability of another to pay damages for covered bodily injury or property damage to others if such contract or agreement is related to your business, and is made before the bodily injury or property damage happens. *Tort Liability* means a liability that would be imposed by law without any contract or agreement.

\*    \*    \*    \*    \*    \*

(emphasis in original).

We find that the rental agreement between Hertz and Smith is not a "covered contract" pursuant to endorsement 44393 of the St. Paul Policy. By entering into the rental agreement with Hertz, Smith agreed to be contractually re-

sponsible for any and all damages to the rental automobile. Accordingly, the essence of Hertz' complaint against Smith is one in breach of contract. The nature of the damages and the nature of the acts alleged both indicate that the underlying action is one based in contract and not in tort. As such, it would be inappropriate to find coverage for the damages to the rental car under the liability policy issued by St. Paul.

In *Toombs NJ Inc. v. Aetna Cas. & Sur. Co.*, 404 Pa.Super. 471, 591 A.2d 304 (1991), we applied a contractual liability provision to a claim based upon a breach of contract and opined that:

> To allow indemnification under the facts presented here would have the effect of making the insurer a sort of silent business partner subject to great risk in the economic venture without any prospects of sharing in the economic benefit. The expansion of the scope of the insurer's liability would be enormous without corresponding compensation. There is simply no reason to expect that such a liability would be covered under a comprehensive liability policy which has, as its genesis, the purpose of protecting an individual or entity from liability for essentially accidental injury to another individual, or property damage to another's possessions, even if, perhaps, the coverage of the policy has been expanded to cover other non-bodily injuries that sound in tort.

*Toombs*, 404 Pa.Super. at 476, 591 A.2d at 306. *See also Giancristoforo v. Mission Gas & Oil Products Inc.*, 776 F.Supp. 1037, 1042 (E.D.Pa.1991). The purpose of insured contract coverage, therefore, is to provide benefits for tort liability that an insured contractually assumes, not liability that is based on a breach of contract.

Pursuant to the rental agreement, Smith agreed to return the rental car to Hertz in its pre-rental condition. Smith further agreed to be responsible for any damage to the car. Since Smith failed to return the car to Hertz in its pre-rental condition, Smith breached his contract with Hertz. Because Hertz' claim against Smith is based upon a breach of contract and not upon bodily injury or property damage to a third

party, we find that the Hertz agreement is not a "covered contract" and, hence, that the contractual liability exclusion bars coverage. *Toombs, supra,* 404 Pa.Super. 471, 591 A.2d 304.

In addition to the contractual liability exclusion in the St. Paul policy, the policy contains a "care, custody or control" exclusion (hereinafter referred to as the "CCC exclusion"). The CCC exclusion provides that:

**Exclusions—Claims We Won't Cover**

**Property in your care.** We won't cover any claim for damage to property owned by, transported by or in the care, custody or control of a protected person.

Endorsement 44366.

This court in *Slate Constr. Co. v. Bituminous Casualty Corp.,* 228 Pa.Super. 1, 323 A.2d 141 (1974) best articulated the purpose for CCC exclusions in liability insurance policies:

With respect to the exclusion from coverage of property damage to property in the "care, custody or control" of the insured, one commentator has noted: "There are several different reasons for such an exclusion in the policy. Fundamentally, were it not for the exclusion there would be a greater moral hazard as far as the insurance company is concerned. It also eliminates the possibility of the insured making the insurance company a guarantor of its workmanship.["]

"The liability policy contemplates payment generally in situations where the ordinary degree of care is the measure of liability. The premium is determined on that basis. **Liability for damage to property in charge of or in the care, custody or control of the insured where there is a bailment is controlled by different rules of law, and as a practical result the hazard is greatly increased.**["]

"**There is usually some form of insurance available to cover injury to or destruction of the excluded property at a higher premium which is commensurate with the risk.** The exclusion is to eliminate securing the same coverage under a liability policy at cheaper rates."

*Slate,* 228 Pa.Super. at 6, 323 A.2d at 144 (quoting Cooke, Jr., *Care, Custody or Control Exclusions,* 1959 Ins.L.J. 7, 9) (emphasis added). *See Warner v. Employers' Liab. Assur. Corp.,* 390 Pa. 62, 133 A.2d 231 (1957) (holding that insurer had no duty to defend where policy contained a CCC exclusion and the damaged goods were held by the insureds under a storage contract which provided that insureds were to be in charge and control of the stored property); *Masters v. Celina Mut. Ins. Co.,* 209 Pa.Super. 111, 224 A.2d 774 (1966) (holding that contractor/insured was not entitled to recover on policy for loss where policy provided that it did not apply to injury to or destruction of property in care, custody or control of the insured or property over which the insured, for any purpose, exercised physical control); *see also Carpenter v. Federal Ins. Co.,* 432 Pa.Super. 111, 637 A.2d 1008 (1994) (comparing the purposes and effect of the CCC exclusion to the work product exclusion). *Cf. International Derrick & Equip. Co. v. Buxbaum,* 240 F.2d 536 (3d Cir.1957) (holding that CCC exclusion in liability policy is not applicable where the property damaged is merely incidental to the property upon which work is being performed by the insured); *McCreary Roofing Co. v. Northern Ins. Co. of N.Y.,* 218 Pa.Super. 193, 275 A.2d 388 (1971) (per curiam) (Montgomery, J., concurring) (holding that CCC exclusion in liability policy is not applicable where the insured damaged roof by transporting materials across the roof, but the insured was not actually working on that portion of the roof that was damaged).

In *Speier v. Ayling,* 158 Pa.Super. 404, 45 A.2d 385 (1946), a case factually similar to this case, a liability policy contained a CCC exclusion which provided that, "This policy does not apply . . . to property owned by . . . [or] in charge of . . . the insured." This court found that, although the insured did not own the car in which she was driving, she was, as a permissive driver of the car, in sole control of the car at the time of the accident. As such, we held that the CCC exclusion applied to her claim and found that her liability insurance did not cover the damage to the car. *Id.* at 406, 45 A.2d at 387.

Following our decision in *Speier*, specifically, and the line of cases concerning the CCC exclusion, generally, we find that Smith was in custody and/or control of the rental car at the time of the accident. *Speier, supra*, 158 Pa.Super. 404, 45 A.2d 385. The CCC exclusion in the St. Paul policy, therefore, operates to preclude coverage for the damages to the rental automobile.

In conclusion, we find that the contractual liability and CCC exclusions in the St. Paul liability policy are clear and unambiguous, *Bateman, supra*, 527 Pa. 241, 590 A.2d 281, and that they preclude Smith from recovering for damages to the rental car. We note that Smith neither selected the optional loss damage waiver offered by Hertz, nor opted to purchase separate collision insurance from an automobile carrier. We, therefore, cannot and will not allow Smith to convert his lower risk, lower premium liability policy into one for collision. To hold otherwise would not be reasonable in light of the commercial context of the case. Accordingly, we find that the trial court did not abuse its discretion or commit an error of law in granting summary judgment in favor of St. Paul and against Smith. *Hetrick, supra*, 415 Pa.Super. 189, 608 A.2d 1074.

Order affirmed.