## Gettysburg Construction Co. v. Griffo

C.P. of Adams County, no. 98-S-302.

*Robert G. Teeter,* for petitioner.
*David R. Dearden,* for respondents.

KUHN, *J.,* August 11, 1998—On September 22, 1994, petitioner, Gettysburg Construction Company, and respondents, Mark D. and Trudi E. Griffo, entered into an agreement for the construction of a residential home. The parties entered into a limited warranty agreement with Quality Builders Warranty Corporation. Respondents allegedly noticed problems with the walls and floors, and proceeded under the terms of the warranty agreement. That process led to arbitration. On October 30, 1997, an arbitration award was issued in favor of petitioner. Pursuant to terms of the warranty agreement, respondents appealed this award to an appellate arbitrator who denied the appeal. On March 26, 1998, petitioner filed a petition to confirm arbitration award and enter judgment. On April 27, 1998, respondents filed a response to this petition. A hearing was held by this court on May 11, 1998, at which time respondents made an oral motion to amend their initial response, raising the argument that the arbitration is not binding common-law arbitration and, in the alternative, that the limited warranty agreement at issue violates Pennsyl-

vania's Unfair Trade Practices and Consumer Protection Law.[1]

## LEGAL DISCUSSION

Respondents first argue that the arbitration was not binding common-law arbitration under the terms of the warranty. The relevant terms of the warranty agreement, for purposes of respondents' first argument, are as follows:

"Note: This limited warranty agreement includes a procedure for informal settlement of disputes. Homeowners should read this entire agreement carefully in order to understand the protection which it provides, the exclusions which are applicable to it, and the warranty standards according to which the builder's compliance will be measured. For additional information, contact QBW at (717) 737-2522.

"IV. General terms and conditions/rights and responsibilities . . .

"E. General terms governing interpretation and operation.

"Certain generally applicable terms and conditions will govern the interpretation and operation of this agreement. These terms and conditions are: . . .

"8. This agreement is deemed to be binding on the builder, QBW, and the purchaser, his heirs, executors, administrators, successors and assigns.

"VI. Complaint and claim procedure

---

1. The court notes petitioner's objection to the filing of respondents' amended response. However, respondents' oral motion to amend was granted, and the amended response will be taken as an exhibit to this oral motion.

"A. Step one. Upon discovery of some fault or defect which you believe is covered by this agreement, you should first send a clear and specific written notice to your builder. You must make your home available for inspections and repairs during normal working hours. Notice to your builder does *not* constitute notice to QBW.

"B. Step two. If, after receiving notice, your builder does not respond within a reasonable time, you should then give written notice of your complaint to QBW by certified mail, return receipt requested. QBW must receive written notice of your complaint no more than 30 days after the expiration of the applicable warranty period. If your complaint is received by QBW after 30 days from the expiration of the warranty on the item, it will *not* be honored. Notice to your builder does *not* constitute notice to QBW. The notice to QBW must include: your warranty number and effective date, your name, address and telephone number, builder name and address, as well as a description of the defect and the warranty standard which applies specifying the page and section of the warranty, as well as all previous written correspondence to the builder pertaining to the defect. Telephone complaints will not be honored as notice. Photographs are not necessary, but if supplied will not be returned.

"C. Step three. QBW will review your complaint and, if necessary, QBW will cause an investigator, who may be an employee of QBW, to view the defect and to report to both you and your builder. The investigator's report will be completed within 20 days of receipt of your request. The report will state the builder's obligations. Upon receipt of this report, you have 30 days to accept the report.

"Where a claimed defect is filed that cannot be observed or determined under normal conditions, it is

the homeowner's responsibility to substantiate that the condition does exist. Any cost involved shall be paid by the owner, and if properly substantiated, reimbursement shall be made by your builder or QBW, whichever is liable for the claim.

"D. Step four. If you disagree with the investigator's report, you have 30 days to notify QBW and the builder in writing, that you disagree. In such event, disputes on covered items shall be submitted for arbitration to the American Arbitration Association or such other independent arbitration service as may be designated by QBW, for resolution in accordance with the rules and regulations of the AAA, or such other service. You must pay the cost of arbitration when filing a claim. Such arbitration shall be a condition precedent to the commencement of any litigation by the homeowner or builder arising out of or connected with the rights and obligations created by this agreement. Upon delivery of an arbitration award to the parties, any party may, within 20 days, request an appeal of the award. A request for appeal must be sent, together with the appropriate administrative fee, to QBW, with copies of the request simultaneously being sent to all other parties. Upon receipt of the request for appeal and the appropriate administrative fee, QBW will forward the application to the AAA, or other service, for administration. The AAA, or other service, will appoint an appellate arbitrator, in accordance with its procedures, to review the matter, and visit the home and view the subject matter of the purchaser's complaint. Within 10 days of receipt of notice of appeal from the AAA, or other service, the other parties must deliver a written reply to the appeal to the AAA, or other service, and simultaneously send it to all other parties. The AAA, or other service, will transmit copies of the appeal and

the reply to the appellate arbitrator. The appellate arbitrator will schedule an additional hearing at the home. The appellate arbitrator shall render a decision regarding the application for appeal and reply, if no party wishes a site hearing, or within 20 days after the site hearing. The appellate arbitrator may not review any new or different complaints, but may modify or change the award if he or she finds that the award exceeds or does not meet the scope of the warranty or its coverage. The AAA, or other such party, will notify all parties of the decision of the appellate arbitrator, which will be final. The builder and QBW have agreed to be bound by the final award of arbitration or appellate arbitration, as applicable, in all states. Judgment upon the final award rendered in arbitration may be entered in any court having jurisdiction in those states where such arbitration is binding upon all parties thereto.

"This request for arbitration shall occur only after the investigation process has been completed. In states where this arbitration can be legally binding on all parties to the arbitration, then this arbitration is binding. In states where this arbitration is not binding on one or more parties to the arbitration, then arbitration in accordance with this contract shall be a condition precedent to the commencement of any litigation by the homeowner or builder to compel compliance with the warranty documents or to seek relief for any dispute arising out of this program.

"1. Acceptance. If you accept the decision, you must sign a copy of that decision which will be provided for this purpose and you must then return the signed copy to QBW within 30 days of its date. Your builder will then perform as required by the decisions, but neither QBW nor the builder will be responsible for damages caused or made worse by your delay in ac-

cepting the decision. If the decision places a time period on your builder's performance, the time allowed will be measured from the date QBW receives your acceptance of the decision. Sixty days will be the standard time for compliance, weather conditions permitting.

"2. Rejection. If you decide to reject the decision, your builder is under no obligation to perform.

"3. Right of access. You must provide the builder, or if applicable, QBW, with reasonable weekday access during normal business hours in order to perform its obligations under this agreement. Failure by you to provide such access to the builder or QBW may relieve the builder or QBW of its obligations under this agreement." (Petition to confirm arbitration award and enter judgment, exhibit 2.)

Respondents argue that the language of the warranty agreement fails to inform the purchaser that the "informal arbitration" (as they describe the process) will be considered binding common-law arbitration. In particular, respondents argue that the language indicating that arbitration is a condition precedent to litigation leads one to the conclusion that litigation is permitted. This court does not agree.

Arbitration agreements are contractual in nature and therefore are interpreted by referring to contract principles. *Smith v. Cumberland Group Ltd.,* 455 Pa. Super. 276, 284, 687 A.2d 1167, 1171 (1997). (citations omitted) We note initially that the task of interpreting a contract is generally performed by the court with the primary objective being the effectuation of the intent of the parties as is reasonably "manifested by the language of the written instrument." *Standard Venetian Blind Co. v. American Empire Insurance Co.,* 503 Pa. 300, 305, 469 A.2d 563, 566 (1983). Additionally, the plain and ordinary meaning of the language in the con-

tract should control when possible. *Toombs N.J. Inc. v. Aetna Casualty & Surety Co.,* 404 Pa. Super. 471, 477, 591 A.2d 304, 307 (1991).

In the matter sub judice, this warranty agreement clearly attempts to cover all possible purchasers. In furtherance of that goal, QBW has attempted to make the law of the state in which the contract is entered applicable. The terms of the warranty clearly state that if the agreement is entered into in a state in which arbitration may be binding upon all parties, it will be. This language could not be clearer. Thus, it is up to the purchaser at that point to discover if the arbitration would be binding upon them in their state. The language is not misleading. The reference to possible litigation after arbitration is clearly meant to apply only to purchasers in those states in which arbitration is not legally binding.

In Pennsylvania, if the language of an arbitration clause does not specifically refer to the Uniform Arbitration Act, 42 Pa.C.S. §7301 et seq., it is conclusively presumed that the parties agreed to common-law arbitration. *Pennsylvania Social Services Union, Local 668, SEIU v. Pennsylvania Department of Labor and Industry,* 105 Pa. Commw. 264, 272, 524 A.2d 1005, 1009 (1987). Common-law arbitration is binding and can be disputed only for the reasons set forth in 42 Pa.C.S. §7341. None of those reasons are raised presently. Thus, the parties contracted for binding arbitration and are bound by those terms.

Respondents argue, in the alternative, that the warranty violates Pennsylvania's Unfair Trade Practices and Consumer Protection Law. 73 Pa.C.S. §201-1 et seq. In particular, respondents claim that petitioner engaged in "fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding." 73

Pa.C.S. §201-2(4)(xxi). Respondents argue that the warranty is "illusory and does not provide the homeowner with any reasonable bargained for consideration." (Respondents' brief in support of amended response to petition to confirm arbitration award and enter judgment at 6.) Additionally, respondents allege that the warranty is an attempt by the builder to deprive the homeowner of any remedy for what are allegedly serious structural defects.

Respondents' first argument is without merit. The warranty provides protection for what is defined as "major structural defects" with the home. The language clearly sets forth what is and what is not covered. It is not deceptive or fraudulent and provides protection for those defects set forth in detail in section V (warranty standards) of the warranty.

Respondents' second argument is that petitioner is attempting to deprive them of any remedy for serious defects with their home. This is incorrect. The arbitration dealt with the issue of whether the alleged defects were covered under the express warranty contracted for by the parties. The determination that the alleged defects are not covered under the warranty is conclusive as to the parties' responsibilities under that warranty only. However, it is not conclusive as to the respondents' ability to bring an action against the builder under the construction contract and/or implied warranties. These are claims separate from the parties' responsibilities under the express warranty agreement. There is no language in the warranty agreement precluding respondents from bringing such actions. As a matter of fact, the warranty language specifically states that it is separate and apart from the contract between purchasers and their builder. Thus, the warranty does not shelter petitioner from all responsibility in relation to the construction of the home.

Accordingly, the attached order is issued.

ORDER

And now, August 11, 1998, petitioner's petition to confirm arbitration award and enter judgment is hereby granted.