

2002 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-27-2002

# Cincinnati Ins Co v. Chams Jewelry Art

Precedential or Non-Precedential:

Docket 01-1764

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2002

Recommended Citation

"Cincinnati Ins Co v. Chams Jewelry Art" (2002). *2002 Decisions.* Paper 217.
http://digitalcommons.law.villanova.edu/thirdcircuit_2002/217

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2002 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

NO. 01-1764

CINCINNATI INSURANCE COMPANY,

Appellant,

v.

CHAM'S JEWELRY ART, INC.; FASHION GEM AND
JEWELRY, INC., d/b/a Yang Company; GEMS AND JEWELRY
PALACE, INC.; LEBANON VALLEY EXPOSITION, a/k/a
Lebanon Valley Expo. Corp.; LESTER F. RITTLE,
Individually and t/a Lebanon County Auxiliary Police;
RICHARD C. HAEFNER,

On Appeal from the United States District Court
for the Middle District of Pennsylvania
D.C. Civil No. 1:cv-98-0052
District Judge: Hon. Yvette Kane.

Submitted Pursuant to Third Circuit LAR 34.1(a)
December 17, 2001
Before: Sloviter and McKee, Circuit Judges and Hayden, District Judge.

Filed: March 27, 2002

OPINION OF THE COURT

McKEE, Circuit Judge.

Cincinnati Insurance Company (hereinafter, "Cincinnati") appeals the district court's grant of summary judgment in favor of the defendants in this declaratory judgment action. For the reasons that follow, we will affirm the judgment of the district court. Inasmuch as we write only for the district court and the parties, we will not set forth the factual background or circumstances of the case except insofar as is necessary for our brief discussion.

I.

The sole issue before us is whether the district court properly determined that the "care, custody and control" provision in defendant Haefner's policy with Cincinnati was not properly invoked and that Cincinnati was required by the insurance contract to defend Haefner. In addressing Cincinnati's motion for summary judgment, the Magistrate Judge recommended that Cincinnati's motion be denied because the jewels were not in the "care, custody and control" of Haefner. The district court adopted the recommendation and, upon appellee Lebanon Exposition's motion for summary judgment, found that the "care, custody and control" clause in the insurance contract was not properly invoked. Consequently, the district court granted summary judgment in favor of the defendants and declared that Cincinnati was obligated to defendant and indemnify Haefner with respect to the underlying claims in Chams Jewelry, et. al. v. Haefner.

Cincinnati contends that the evidence reveals that Haefner had care, custody and control of the jewelry at the time when it was stolen. We disagree.

Under Pennsylvania law, we must focus upon the reasonable expectation of the insured in determining if this loss was covered. Dibble v. Security of America Life Ins. Co., 404 Pa. Super 205, 210 (1991). The reasonable expectation of the insured is the focal point in interpreting an insurance policy. See Collister v. Nationwide Life Ins. Co.,

479 Pa. 579 (1978); Winters v. Erie Ins. Group, 367 Pa. Super. 253 (1987). However, an insured may not complain that his or her reasonable expectations were frustrated by policy limitations which are clear and unambiguous. Bateman v. Motorists Mut. Ins. Co., 527 Pa. 241, 245 (1991).

An insurer owes a duty to defend an insured whenever a complaint alleges a claim that is potentially within the scope of coverage. see Visiting Nurse Ass'n of Greater Philadelphia v. St. Paul Fire & Marine Ins. Co., 65 F.3d 1097, 1100 (3d Cir. 1995), and it is the burden of establishing that an exclusion applies rests squarely upon the insurer. See Allstate Ins. Co. v. Brown, 834 F. Supp. 854, 857 (E. D. Pa. 1993); see also Sykes v. Nationwide Mut. Ins. Co., 198 A.3d 844 (Pa. 1964) (burden of establishing a "care, custody or control" provision exclusion rests on insurer). When considering the applicability of a "care, custody or control" exclusion under Pennsylvania law, we are guided by two well-settled principles: (1) because insurance policies are frequently considered to be contracts of adhesion, any ambiguity must be construed in favor of the insured; and (2) exceptions and exclusions to the general liability of the insurer are strictly construed against the insurance company. See Slate Const. Co. v. Bitumious Casualty Corp., 323 A.2d 141 (Pa. Super. 1974); Resolution Trust Corp. v. Fidelity and Desposit Co., 205 F.3d 615 (3d Cir. 2000). "The clarity or ambiguity of such an exclusion clause obviously varies with the factual situation to which it must be applied." Hartford Fire Ins. Co. v. B. Barks & Sons, Inc., 1999 U.S. Dist. LEXIS 7744 (E.D. Pa. 1999) (citing Huntington Industries, Inc.)

Cincinnati contends that the circumstances here establish that Haefner had care, custody and control of the jewels at the exposition. Cincinnati's contention rests upon the argument that Haefner, as organizer of the Gemboree, exercised care, custody and control of the gems the exhibitors brought to the Gemboree. The parties agree that during the day of the exhibition, the gems were not in the care, custody and control of Haefner. Instead, the jewelry was in the control of the individual dealers. Thus, this dispute centers around whether Haefner was in care, custody and control of the jewelry during the evening, specifically the evening of the break-in. The district court noted that "as there was no bailment to Haefner nor another form of an exercise of care, custody or control over the gems by Haefner, the gems were not under the care, custody and control of Haefner."

Our independent review of the record leads us to the same conclusion. Haefner organized the Gemboree, including hiring the Lebanon County Auxillary Police for the security for the exhibition hall. However, during the evening, Haefner neither had access to the hall itself nor direct charge of the jewels inside. Haefner's agent, Price, who did have a set of keys to the building and access to the site, and did perform a "walk-down" through the building during the evening of the robbery, was not in charge of security nor did he have access to the jewels. The Lebanon County Auxilary Police had exclusive control of security at the site. Neither Haefner nor Price were on site during the evening. Thus, the district court did not err in concluding that, as a matter of law, the gems were not under the care, custody or control of Haefner.

Cincinnati, nonetheless, contends that Pennsylvania law counsels in favor of its position. In particular, Cincinnati relies heavily upon Hertz Corp. v. Smith, 441 Pa. Super 575 (1995) and Speier v. Ayling, 158 Pa. Super. 404 (1995). There, the insureds were driving insured cars when the damage occurred. Therefore, the "care, custody or control" exclusion applied.

The present is different because Haefner purchased insurance to cover potential liability for property damage during the exposition rather than liability resulting from use of the gems. The jewelers here are suing for the "property damage" caused by the theft of the jewels. Even though Haefner had organized the exposition and contracted with the police for security, the record shows (and the district court noted) that he never had exclusive, direct control or custody of the stolen gems in the form of a balement or otherwise. Therefore, Hertz and Spier, are do not control.

## II.

Nonetheless, Cincinnati contends that the evidence shows that Haefner did not reasonably expect that he would be protected by the liability policy that he purchased from Cincinnati. As stated above, our analysis is guided by the reasonable expectation of the insured. Dibble, 479 Pa. at 410.

Cincinnati argues that the evidence establishes that Haefner, did not expect coverage. It points to his efforts in organizing the Gemboree, informing exhibitors in the "Application for Dealer Space" that he would not obtain insurance to protect the gem dealers and exhibitors from loss due to theft, and subsequently purchasing a policy with a "care, custody and control" clause illustrate his purported expectation that the losses would not be covered.

However, that clause does not apply unless the insured property was in Haefner's "care, custody and control" at the time of the robbery. We agree that it wasn't. Furthermore, the Magistrate Judge correctly noted that Haefner did not assume responsibility for losses by informing exhibitors that he was not providing insurance. To the contrary, that merely supports Haefner's assertion that he reasonably expected coverage under this policy in order to indemnify himself against losses or damage during the course of the Gemboree. Therefore, we find that Cincinnati's argument that Haefner did not reasonably expect coverage is without merit.

### III.

For the forgoing reasons, we will affirm the order denying summary judgment to Cincinnati and the order granting summary judgment to appellees.

_____

TO THE CLERK:

Please file the foregoing memorandum opinion.

By the Court:


/s/Theodore A. McKee
Circuit Judg